657 So.2d 397 (1995)
Earl BOUILLION, et al., Plaintiffs-Appellees/Appellants,
v.
The CITY OF NEW IBERIA, Defendant-Appellant/Appellee.
No. 95-120.
Court of Appeal of Louisiana, Third Circuit.
May 31, 1995.
*398 Michael David Lopresto, New Iberia, for Earl Bouillion et al.
John Jeffrey Simon, New Iberia, for City of New Iberia.
Before DOUCET, C.J., and THIBODEAUX and PETERS, JJ.
PETERS, Judge.
This dispute arose between the City of New Iberia and certain former employees over the status of sick leave benefits which accumulated before January 1, 1991, and which were unused as of that date. The former employees, Earl Bouillion, Walter Maturin, Renaud Bourque, J. Donald Doucet, Clarence Oliva, Sr., and Calvin Davis, Sr., left the service of the City after January 1, 1991, and brought this action against the City to be compensated for the unused sick leave each had accumulated prior to January 1, 1991. Doucet also sought payment for sick leave allegedly accumulated after January 1, 1991. Additionally, the plaintiffs sought statutory penalties and attorney fees for the City's failure to timely pay the benefits. All the plaintiffs except J. Donald Doucet were classified employees of the City on January 1, 1991; Doucet was an unclassified employee.
The trial court granted a writ of mandamus ordering the Mayor of the City of New Iberia to issue checks to all of the plaintiffs except Doucet for payment of the sick leave in dispute. The trial court also awarded attorney fees to those plaintiffs but dismissed their claim for penalties. All of Doucet's claims were rejected. The City has appealed the judgment, and the plaintiffs have answered the appeal. In the answer, Doucet seeks full judgment as originally prayed for, and all remaining plaintiffs seek penalties. Additionally, all plaintiffs seek additional attorney fees for the prosecution of this appeal.

DISCUSSION OF RECORD
Prior to January 1, 1991, the sick leave policy for New Iberia city employees, both classified and unclassified, was governed by a policy and procedure manual promulgated in 1982. Under the 1982 rules, an employee earned sick leave at an annual rate of thirty work days a year but could not accrue more than 180 days of sick leave. These rules were silent concerning payment of accumulated sick leave. The general policy was that *399 employees who left the service of the City were not paid for unused sick leave.
On October 25, 1990, the City of New Iberia Municipal Government Employees Civil Service Board adopted new rules and regulations to govern its employees. The provisions relative to sick leave were to be effective January 1, 1991. The dispute herein arises because of the language of Rule VIII, Section 2.1(O) of the new rules, which provides:
Upon an employee's regular or disability retirement or termination because of death he, or his estate, if appropriate, shall be paid at his regular hourly rate for all accumulated hours of sick leave. Employees shall not be paid for accumulated sick leave upon termination for any other reason.
(Emphasis added).
The new rules and regulations adopted in October of 1990, also affect the manner in which sick leave is calculated and carried forward. Rule VIII, Section 2.1(B) provides in part that sick leave is credited at a rate of.0462 hours for each regularly scheduled straight time hour of work. This formula reduced the annual maximum possible accumulation from thirty work days per year to twelve. Section (G) provides in part that all unused sick leave shall be carried forward whereas the previous rules limited the maximum accumulation to 180 days.
According to Nancy Dixon, the personnel director for classified civil service employees for the City from November 1, 1990, to August 3, 1994, no retiring employee was paid for unused sick leave accumulated before January 1, 1991. Ms. Dixon testified that sick leave accumulated before January 1, 1991, was sometimes known at City Hall as "old" sick leave and that sick leave accumulated after January 1, 1991, was "new" sick leave. According to Ms. Dixon, sick leave was deducted from old sick leave first, and when that was exhausted, new sick leave was deducted.
All of the plaintiffs retired after January 1, 1991. In this appeal, the only issue as to all the plaintiffs, except Doucet is whether Rule VIII, Section 2.1(O) applies retroactively so as to give them the right to be compensated for sick leave accumulated prior to the effective date of the new rules concerning sick leave. Doucet presents another issue altogether because the new rules do not apply to nonclassified employees. Not only did Doucet not receive payment for sick leave accumulated prior to January 1, 1991, but he claims he is owed for ten and one-half days of accumulated sick leave after January 1, 1991.
The number of days accumulated prior to January 1, 1991, for each plaintiff are not in dispute. The parties stipulated that, prior to January 1, 1991, Bouillion accumulated 84 days of sick leave, Maturin accumulated 149 days of sick leave, Bourque accumulated 175 days of sick leave, Oliva accumulated 139 days of sick leave, and Davis accumulated 167 days of sick leave. Doucet testified and entered into evidence calculations to show that he had accumulated 108.5 days of sick leave prior to January 1, 1991.
The trial court ruled in favor of Bouillion, Maturin, Bourque, Oliva, and Davis finding they were entitled to be compensated for their sick leave accumulated prior to January 1, 1991. The trial court also found that, as an unclassified employee, Doucet was not entitled to be paid for sick leave accumulated prior to January 1, 1991, and that he had been fully compensated for sick leave accumulated after the effective date of the new rules.

OPINION
The City raises several assignments of error. However, because we find clear error in the trial court's award of payment for sick leave accumulated prior to January 1, 1991, we need only address that error.
The City argues that an award of the sick leave accumulated prior to the rule change would constitute a retroactive increase in pay prohibited by the Louisiana Constitution. We agree. La. Const. art. VII, § 14(A) provides in part:
Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, *400 pledged, or donated to or for any person, association, or corporation, public or private.
The trial court found that payment for sick leave accumulated prior to the effective date of the rule was not a retroactive application of the rule but was simply a different method of compensating an employee for a right already earned. We cannot agree with that analysis. Prior to January 1, 1991, an employee had no right to payment for unused sick leave. The only benefit derived from the earned sick leave was that the employee's pay would not be reduced when he was forced to take time off for illness or injury which prevented performance of the employee's usual duties or for medical, dental, or optical consultation or treatment. The City was under no obligation to do anything other than allow the employee the use of the time for the purposes specified above, and the employee had no expectation of payment for unused sick leave. When the employee left the employment, he knew he would not be compensated for his remaining accumulated sick leave. The rule in effect after January 1, 1991, was not a different form of compensation but rather compensation where there had previously been none.
Bonuses paid from public funds violate La. Const. art. VII, § 14(A). State v. Davis, 539 So.2d 803 (La.App. 3 Cir.), writ denied, 541 So.2d 840 (La.1989). This court has recognized that in order for payments to be legal, the payments must be in the form of salary increases for the future and not extra compensation for past services. McElveen v. Callahan, 309 So.2d 379 (La.App. 3 Cir.), writ denied, 313 So.2d 602 (La.1975).
In City of Port Allen, La. v. Louisiana Mun. Risk Management Agency, Inc., 439 So.2d 399, 401 (La.1983), the court noted that cases under the 1921 Louisiana Constitution, which it stated contained a provision virtually identical to the present Article VII, § 14(A), "hold primarily that this section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so." In that case, the supreme court held a statute violated Article VII, § 14(A) insofar as the statute purported to impose solidary liability for unpaid claims on local political subdivisions which had formed intergovernmental risk management agencies.
The plaintiffs contend the new rule does not create a retroactive application but in effect constitutes a prospective raise. We disagree. While the right to enjoy the benefit is prospective, i.e. occurs upon death or retirement, the benefit itself did not come into being until January 1, 1991. Prior to that date, the City was under no obligation to pay for unused sick leave. Thus, application of the rule to sick leave prior to the effective date of the rule operates as a retroactive application of the rule.
It is also the plaintiffs' position that the benefit was not a donation but operated to the benefit of the public in that an employee would have an incentive not to take sick leave for minor ailments or illnesses, such as a cold, if he knew that, upon his retirement, he was to receive payment for that day not taken. Plaintiffs argue that as a result of the employee not taking that day of sick leave, the City would have no decrease in productivity because of the absence of the individual and in some instances might not have to replace that individual for that particular day. In other words, there is a quid pro quo under the arrangement, according to the plaintiffs.
Initially, we do not find that the rule has as its purpose the giving of an incentive to employees to not take sick leave. The rule is not applicable to all City employees but only applies to civil service employees who take regular or disability retirement or whose employment is terminated because of death. Thus, it would appear that the rule is part of a compensation package to provide an extra benefit to certain employees who stay with the City. In any event, it does not appear that either the old or new rules contemplate the taking of sick leave for minor ailments. Under both the 1982 rules and the 1991 rules, an employee could take sick leave with pay for illness which prevented performance of his usual duties or for medical, dental, or optical consultation or treatment. Thus, we find no benefit to the City in giving an incentive not to take sick leave for that which the employee should not be taking sick leave *401 anyway. Additionally, we find no benefit to the City in having an employee at work who, due to injury or illness, cannot perform his duties.
The plaintiffs also cite Morial v. Orleans Parish Sch. Bd., 332 So.2d 503 (La.App. 4 Cir.), writ refused, 337 So.2d 530 (La.1976); Duet v. Lafourche Parish Sch. Bd., 625 So.2d 753 (La.App. 1 Cir.1993); and Knecht v. Bd. of Trustees for State Colleges and Univs. and Northwestern State Univ., 591 So.2d 690 (La. 1991) for the proposition that payment under the new rules does not constitute a donation.[1] Additionally, the plaintiffs cite attorney general opinions in support of their argument.
Both Morial and Duet involve a situation in which a teacher sought to recover payment of her salary for a period in which she was absent from work on sick leave past her accumulated sick leave days. In Morial, the court found that the case fell squarely within a statutory provision prohibiting parish school boards from deducting any amount from a teacher's salary in case of absence unless a substitute teacher was employed and actually served in the teacher's absence. The school board argued that the provision in question was unconstitutional in that payment of any salary without corresponding work would actually be a gift from a state subdivision to a private person.[2] The court rejected this argument stating:
Obviously, the intent of the statute is to offer a fringe benefit to the teachers of this state in connection with their employment. If [the school board's] argument is taken literally then all situations in which a person received pay for hours or days not actually worked would have to be struck down as unconstitutional. This would include paid vacations, minimum sick leave pay and sabbatical leave pay to name but a few. The intent of the statute is to not only provide a benefit to the teachers but to also serve as an incentive to the school boards to hire substitute teachers. We find that the payment of the amount provided in [the statute] is not a gift, but rather a legislatively created benefit, earned by virtue of the employment itself.
Morial, 332 So.2d at 505.
Similarly, in Duet the court stated:
We view the legislative grant of differential pay as we view the grant of paid sick leave [sic] it is part of the compensation package of state teachers, not a prohibited donation of public funds.
Duet, 625 So.2d at 756.
We do not find that either of these cases supports the plaintiffs' position. Neither involves an attempt to apply a statute or rule to sick leave accumulated prior to the effective date of the statute or rule as the plaintiffs attempt to do in the case at hand. The issue in the instant case is not whether payment of unused sick leave is permissible as compensation for an employee. Indeed, Morial speaks in terms of a benefit earned because of the employment relationship. In contrast, in the instant case, the right to payment for unused sick leave could not have been earned prior to January 1, 1991, and was not part of the compensation package prior to that time because the right did not exist prior to that time.
For the same reason, we do not find that Knecht, 591 So.2d 690 supports the plaintiffs' position. In that case, the issue was whether the plaintiffs, former and current employees of Northwestern State University, had a vested right in accumulated, but unused, compensatory leave accrued pursuant to their employer's policy of compensating overtime by granting paid leave. The court stated:
Nearly every state has determined, using precepts similar to our civilian principles, that when an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions, the result is not a mere gratuity or *402 illusory promise but a vested right in the employee to the promised benefit.
Id. at 695.
In that case, the court explained that if an employee is promised an hour of paid leave in return for an hour of overtime work for which he received no pay in wages, the paid leave is a form of deferred compensation in lieu of wages. The court further stated that once the services are rendered, the right to receive the promised remuneration vests.
Again, in Knecht, the court spoke in terms of "when" an employer promises a benefit and "if" an employee is promised a benefit. Thus, Knecht is inapplicable because payment for unused sick leave was not part of the compensation package at anytime prior to the effective date of the rule. Under the circumstances of this case, payment of sick leave that accrued prior to January 1, 1991, would be a retroactive increase in pay or a bonus and thus unconstitutional.
The plaintiffs assert that due process provides an exception to La. Const. art. VII, § 14(A). In support of that assertion, they cite an attorney general opinion for the proposition that where customary employee benefits and a valid contractual relationship evolve into a property right and become protected by due process, an exemption to the constitutional prohibition is created. However, this record contains no evidence that employees were paid for accumulated sick leave prior to January 1, 1991. Therefore, there existed no customary employee benefit which could have evolved into a property right. We find no merit in this argument.
Finally, we address Doucet's claim for payment of sick leave that accrued after January 1, 1991. Doucet claimed seventeen and one-half days of accrued sick leave, and he was paid for seven. He now claims payment for the remaining ten and one-half days. The trial court found that Doucet had been fully compensated for the post-January 1, 1991 sick leave. Setting aside the issues of whether Doucet, an unclassified employee, was entitled to payment of sick leave under Rule VIII, Section 2.1(O) or any policy of nondiscrimination between classified and unclassified employees, we find no error in the trial court's determination that Doucet had received all payments to which he was entitled. Doucet retired in July of 1991. Under the new rules, sick leave is accumulated at a rate of one day a month; thus, he accumulated seven days of "new" sick leave, the amount for which he was paid. He claims seventeen and one-half days on the basis of the rate of accumulation of sick leave under the 1982 rules, or thirty days per year. However, we do not agree that Doucet was entitled to choose the payment benefit under one set of rules and the accumulation rate under another set of rules. In any event, Grayling Hadnott, the administrative assistant to the Mayor, indicated that the rules changed in January of 1991, to provide for a rate of twelve days of sick leave per year for both classified and unclassified employees. Thus, we affirm the rejection of Doucet's claims.

DISPOSITION
For the foregoing reasons, we reverse the judgment issuing the writ of mandamus and awarding payment for accumulated sick leave before January 1, 1991. We also reverse that portion of the judgment awarding attorney fees. In all other respects, we affirm the judgment. We assess costs of this appeal to the plaintiffs.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] Duet was overruled on other grounds by Dagenhardt v. Terrebonne Parish Sch. Bd., 92-2308 (La.App. 1 Cir. 5/20/94); 636 So.2d 1203. However, Dagenhardt was reversed by the supreme court at 94-1672 (La. 2/20/95), 650 So.2d 1161.
[2] This case was decided under La. Const. of 1921 art. IV, § 12. However, the supreme court in City of Port Allen, La. v. Louisiana Mun. Risk Management Agency, Inc., 439 So.2d 399 (La. 1983) noted that the 1921 provision was virtually identical to the present La. Const. art. VII, § 14(A).