|, STEWART, J.
This case arises out of a dispute between the plaintiff, Joy Kelley, and her former employer, Caldwell Parish Police Jury, the defendant, for payment of certain unused annual and sick leave which she claimed to be due and owing to her from the defendant. The trial court rendered judgment in favor of Kelley, which entitled her to the earned but unused sick leave and annual leave due from the period of 1970 through 1984. The defendant, Caldwell Parish Police Jury, appeals the trial court judgment, urging three assignments of error. We amend and as amended affirm.
FACTS
The plaintiff, Joy Kelley (“Kelley”), was employed by the Caldwell Parish Police Jury (“Police Jury”) from May 1, 1969 until June 1995. After termination of her employment the Police Jury tendered a check to Kelley for accrued and unused leave. On August 17, 1995, Kelley filed a petition seeking compensation for 138 days of annual leave and 150 days of sick leave.
Kelley’s petition alleges that until she received a copy of the 1984 revision of the policy manual regarding sick and annual leave, she thought she only had a total of seven (7) days a year for sick and annual leave combined. However, the policy was ten (10) sick days and fourteen (14) annual leave days a year.
There are two key documents which reflect the Police Jury’s employment policy. “Annual Leave 701:1” sets out the Police Jury’s vacation policy and “Sick Leave 502:1” sets out the sick leave policy.
Sick Leave 502:1 reads, in pertinent part:
“Sick leave shall be credited to a permanent full-time employee at the rate of 10 days per year as of 1978. Sick leave may be accumulated with no set limit on number of days an employee may accumulate ...
Each Supervisor/Department head shall keep records of accrued sick leave, sick leave taken and balance of sick leave for each employee.”
1?,Annual Leave 701:1 reads, in pertinent part:
“Each full-time employee shall be entitled to annual leave with pay in accordance with the following schedule: 14 days per year — all employees.
Earned annual leave not taken by an employee may be accumulated and carried forward into the next calendar year. Accumulated annual leave shall not exceed thirty (30) working days at any one time.”
Upon separation from service, payment for the accrued annual leave up to date of separation shall be paid. The rate of pay shall be computed on the basis of *785 the rate the employee is receiving at the time of separation.”
However, the Police Jury changed rules 502:1 and 701:1 by a resolution adopted February 28, 1984. The Resolution provides, in pertinent part, that:
Upon termination, retirement or resignation, each employee will be paid as follows: Employees with 10 years or less a maximum of 90 days accumulated sick leave and annual leave combined. Employees with 10' years or moré not to exceed 105 sick leave and annual leave combined.
The trial in this matter was held on January 7, 1998. On June 17, 1998, the trial court rendered judgment in favor of Kelley, which entitled her to the earned but unused sick leave and annual leave due from the period of 1970 through 1984. In response thereto, the Police Jury filed a Motion to Clarify the June 17, 1998 ruling. A hearing was held on the motion at which time the court ruled that Kelley was to be given credit for accrued sick leave from 1970 to 1978 at one (1) day per month and from 1978 to 1984 at ten (10) days per year. The court further explained that although there was no provision for compensation, that not to compensate Kelley would be to penalize a person who does not become sick and goes to work every day. The trial court also found that Kelley was entitled to thirty (30) days of annual leave-from 1970 to 1984 which is the maximum amount allowed by Section 701:1 of the policy manual. A final judgment was rendered on August 25,1998, awarding Kelley $10,237.50, plus legal interest from August 17, 1995 and for all costs of the proceedings.
JjsLAW
Factual findings should not be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990).
Under the provisions of LSA-R.S. 23:631 a resigning or discharged employee is entitled to recover vacation pay accruing prior to his discharge, unless the employer’s established policy precludes compensation for unused vacation days. Vacation pay, like commissions, is considered to be wages for the purpose of LSA-R.S. 23:631. Potvin v. Wright’s Sound Gallery, Inc., 568 So.2d 623, 627 (La.App. 2 Cir.1990); Tompkins v. Schering Corporation, 441 So.2d 455 (La.App. 2d Cir.1983).
DISCUSSION
In the instant case, on appeal no one seriously disputes Kelley’s entitlement to ten days paid annual leave per year and to compensation for any accrued annual leave time at the time of her resignation. The controversy is over how much, if any, accrued but unpaid annual and/or sick time Kelley was entitled to at the time of her resignation.
The Police Jury argues that the trial court erred in ordering Kelley be compensated for sick leave accumulated during a time period no such right or expectation existed and cites Bouillion v. City of New Iberia, 95-120 (LaApp. 3 Cir. 5/31/95) 657 So.2d 397 in support of their argument.
In Bouillion, retired classified city employees sought to compel the City of New Iberia to pay them for sick leave accumulated before enactment of a rule providing for payment of accumulated sick leave, as the plaintiff attempts to do in |4the case at hand. The Bouillion court held that the rule would not be applied retroactively such that classified employees and unclassified employee would be compensated for sick leave accumulated before the rule was enacted, since such application would constitute retroactive pay increase prohibited by Constitution.
*786 There are two pivotal issues on appeal: 1) whether Kelley proved that she had accumulated unused sick and/or annual leave that she was entitled to be compensated for during the period of 1970-1984 and 2) if Kelley had accumulated unused sick and/or annual leave during the period of 1970-1984, was Kelley entitled to compensation.
Kelley, who was in a supervisory position, testified that she kept no record of the days she took off during the 1970-1984 time period. Kelley’s proof and justification of her entitlement to more leave prior to 1984 centered upon her statement that she only took off seven days each year for vacation and sick time and was docked for any absences over seven days. She further contends that she had the mistaken belief that only seven days for both vacation and sick leave were afforded her. The more recent police jury records (post-1984) are most significant in showing that Kelley was aware of the ongoing tally of her leave time but had never requested an adjustment of her total accumulated leave. For years, Kelley signed the monthly sheets of her work attendance which reflected her accumulated leave.
The trial court determined that Kelley had approximately 197 days of accumulated leave, crediting the maximum accumulated sick time without documented proof by the plaintiff of the actual sick and vacation time she used from 1969-1984. Despite the lack of documentation, the trial court’s conclusion that Kelley had accumulated a considerable amount of sick leave by 1984 is reasonable.
IfiFirst, based upon a legislative audit for year end December 31, 1994, the police jury records reflected that Kelley had accumulated 26 days sick leave and eight (8) days vacation leave. Kelley retired in 1995 and that year she expended seven (7) days for sick leave and 17 days for vacation. Assuming that she was entitled to five (5) days sick leave and seven (7) days annual leave for working one-half of the year in 1995 and that two days of her excessive 17 days annual leave were deducted from sick leave, Kelley had only 22 days sick leave accumulated upon her retirement in 1995. This was paid to her in two payments prior to trial as evidenced by the record.
Secondly, we address Kelley’s right to compensation for leave accumulated during the period of 1970-1984. There are two key documents which reflect the Police Jury’s employment policy. “Annual Leave 701:1” sets out the Police Jury’s vacation policy and “Sick Leave 502:1” sets out the sick leave policy. Although the trial judge provided no explanation as to when these employment rules became effective, we surmise that these rules were in effect before February 16,1984.
Pre-1984, the two rules, 502:1 and 701:1, reveal that while an express accumulation/payment provision was applicable to vacation time upon separation of employment, no such payment provision was given for sick leave. Therefore, the accumulation payment issue for departing employees was addressed, providing compensation for annual leave time only during the time in question. The rules were silent concerning payment of accumulated sick leave. Sick leave is more contingent in nature, contingent upon an employee becoming sick and needing time off. There is no accumulation only utilization when the contingency occurs. The employees had no right to payment for unused sick leave.
The Police Jury changed rules 502:1 and 701:1 by a resolution adopted February 28, 1984. The Resolution provides, in pertinent part, that:
|fiUpon termination, retirement or resignation, each employee will be paid as follows: Employees with 10 years or less a maximum of 90 days accumulated sick leave and annual leave combined. Employees with 10 years or more not to exceed 105 sick leave and annual leave combined.
*787 In reviewing the Police Jury’s employment policy provision quoted above, we reach the following conclusions regarding Kelley’s entitlement to the sick leave she had accumulated pre-1984. Prior to the 1984 Resolution, sick leave could not be accumulated for payment. We find that such a right did not exist and was not part of the compensation package prior to the 1984 resolution. However, after February 1984, a ten-year employee could, upon termination, retirement or resignation, receive compensation for 105 days of a combination of sick and annual pay. The new policy provided compensation for sick leave where previously none existed.
The testimony of Ms. Mary McClanahan (Ms. McClanahan) revealed that she left the employment of the Police Jury and was compensated for unused sick and annual leave time in accordance with the 1984 resolution. Apparently, the leave for which Ms. McClanahan was compensated accumulated pre-1984. Therefore, the allowance for payment was retroactively applied in that it included leave accrued before the 1984 resolution and the language of the February 1984 resolution indicates that such was the resolution’s intention, which distinguishes Bouillion from the case at hand. The only way a ten-year employee in 1984 could be compensated for 105 days of leave would be to include time accumulated before 1984. Thus, Kelley became eligible in 1984 for payment of up to 105 days of leave which included leave she accumulated pre-1984.
We have thoroughly reviewed the entire record in this matter. Given the entirety of the testimony and documentary evidence, and applying the February 1984 resolution to Kelley, we conclude that there is a 105-day cap on the amount of leave for which she can be compensated. Therefore, we the amend the trial |7court judgment and find that Kelley is entitled to compensation as an employee with 10 years or more not to exceed 105 sick leave and annual leave combined.
We further find that Kelley is entitled compensation for 105 leave days and that the 105 days must be reduced by the 22 days that she was already paid. Eighty-three (88) days is the net amount of leave for which Kelley is to be compensated. (83 days x 7 hrs./day x $7.42 hr. = $4,311.02)
CONCLUSION
For the above reasons, the judgment of the trial court is amended so as to reduce Kelley’s award to the net sum of eighty-three (83) leave days, after reducing 105 days by the 22 days that Kelley was already paid. •
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Joy Kelley, and against Caldwell Parish Police Jury, in the. net sum of $4,311.02, together with legal interest from date of judicial demand until paid. The judgment is amended and, as amended, the judgment is affirmed. Costs of this appeal are assessed against the parties equally.
AMENDED AND, AS AMENDED, AFFIRMED.