577 So.2d 730 (1991)
Gene KNECHT, et al.
v.
BOARD OF TRUSTEES FOR STATE COLLEGES AND UNIVERSITIES.
No. CA 89 2003.
Court of Appeal of Louisiana, First Circuit.
March 5, 1991.
Writ Granted May 24, 1991.
Jeffrey H. Thomas, Natchitoches, for plaintiff-appellant Gene Knecht, et al.
Michael L. Hebert, Baton Rouge, for defendant-appellee The Bd. of Trustees for State Colleges and Universities.
Before EDWARDS, WATKINS and LeBLANC, JJ.
EDWARDS, Judge.
Plaintiffs, a group of unclassified employees of Northwestern State University employed between 1974 and 1979, filed suit to force the Board of Trustees for State Colleges and Universities (Board) to reimburse the plaintiffs for unused accumulated compensatory time. The trial court dismissed the claims of the retired employees, but held that those plaintiffs employed at the time of trial could attempt to use the accumulated time for leave with the approval of their supervisors. Plaintiffs appealed the judgment. We affirm.
In 1974, the Board which is responsible for the supervision of Northwestern State University, approved for use Executive Order No. 56, which provided for annual leave, sick leave, compensatory time, and other forms of leave for unclassified state employees. In 1979, the Board abolished the compensatory leave provisions and made no provision for the use of any previously accumulated time as the basis for paid leave.
Plaintiffs were hired on an annual basis as contract salaried employees and were not paid on an hourly wage scale. Provisions for compensatory leave were not part of the employment contract. Plaintiffs held positions as administrators, professors, or athletic coaches. The stipulated value of the unused time attributed to each plaintiff ranges from approximately $150 to $65,000.
*731 At trial, the plaintiffs who testified stated that they were aware of the provisions governing compensatory time and of the requirement of supervisor approval before the time could be earned or used as paid leave. Some plaintiffs used between two to eight weeks of their accumulated compensatory time a year as paid leave. The unused time would be tracked on each employee's check stub. None of the plaintiffs who testified had used compensatory time, in effect, to retire early with full pay until the actual retirement date. The plaintiffs did not know, of their own personal knowledge, of anyone who had been granted approval by the university for the use of the compensatory time in that manner.[1] No evidence appears in the record of any payments, for unused accumulated compensatory time, made to employees who retired or left their positions during the years 1974-79 or after.
Sections 7.1-7.3 of Executive Order No. 56, dated January 1, 1974, dealt specifically with compensatory time and provided:
Section 7. Compensatory Leave.
7.1 An appointing authority may require that an employee work on a holiday or at any time he is not regularly required to be on duty. In such cases the appointing authority may permit the employee to earn compensatory leave equal to the number of extra hours he is required to work, unless he has been paid for such extra time.
7.2 Earned compensatory leave shall be promptly credited to the employee and may, with the approval of the appointing authority, be used by him at a future time. Compensatory leave may be accumulated without limitation.
7.3 An appointing authority may require an employee to use his earned compensatory leave at any time.
(emphasis added)
Plaintiffs appealed the judgment and alleged that the trial court erred in failing to find that the retired plaintiffs had a vested property right in the accumulated compensatory time and erred in its award of the opportunity for the employed plaintiffs to "work out their compensatory time as best they can," in lieu of a monetary judgment. Plaintiffs argue that Section 7 created a property interest in the accumulated unused compensatory time and that they have been denied payment to reimburse them for a constitutionally protected right in the unused compensatory time that accrued before the policy was abolished.
A property right or interest in a benefit must be based on "more than an abstract need or desire, or unilateral expectation of it." Jones v. City Parish of East Baton Rouge, 526 So.2d 462, 464 (La.App. 1st Cir.1988). To rise to the level of a property interest, the benefit sought must be a part of a mutually explicit understanding between employees and the appointing authority. Property interests are protected by the United States Constitution, but are created by state law. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 2708-2709, 33 L.Ed.2d 548 (1972). Protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law  rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 92 S.Ct. at 2709. An employee's entitlement to a benefit must be clearly established and understood. Not every interest or benefit provided by state law is a protected property interest. Jackson v. Department of Public Safety For State of Louisiana, 675 F.Supp. 1025, 1030 (M.D.La.1985); see also Brown v. Brienen, 722 F.2d 360 (7th Cir.1983) (discussion of what constitutes a protected interest). "To the extent a request appeals to discretion rather than to rules, there is no property." [citations omitted] Scott v. Village of Kewaskum, 786 F.2d 338, 340 (7th Cir.1986). "[P]roperty is what is securely and durably yours under ... law, as distinct from what *732 you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir.1983).
Section 7 provided a discretionary policy for the earning of compensatory time and its use as leave. Under Section 7.1, an employee, who had not been paid overtime, could earn compensatory time with supervisor approval. The provisions of Section 7.2 are not couched in mandatory terms and state only that an employee may be allowed to use the earned time for future paid leave with approval of the supervisor. In these respects, the policy was limited.[2]
The discretionary nature of the policy and the limitations on the earning and use of compensatory time were clear and ascertainable at the time the policy was first implemented, and in advance of the yearly contract negotiations. These limitations were not applied in an discriminatory manner to divest plaintiffs of rights enjoyed by other similarly situated employees. See Jackson, 675 F.Supp. at 1031. In Jones, the unwritten policy of giving compensatory time and allowing early retirement was long standing, well-known, and routinely followed. The facts here are different.
The compensatory leave policy was a benefit or privilege, but it did not, under the facts of this case, rise to the level of a protected property interest. The written state rules that conferred the benefit do not support a legitimate expectation of clear entitlement to the benefit and contain no basis for finding an explicit agreement between the parties that the benefit sought by plaintiffs was guaranteed. Neither did the customary usage of the compensatory leave policy at the time constitute a tacit agreement or contract with the employees that guaranteed future use of all the accumulated time, payment for any unused time, or application of the unused time to extend retirement dates.
For these reasons, we affirm the dismissal of the claims of the retired employees. We disagree with the finding of the trial court that allows employed plaintiffs an opportunity to use the accumulated compensatory time as leave. No vested property interest existed. However, we are not permitted to reverse this portion of the judgment. The defendant did not appeal or answer the appeal. Costs of this appeal are assessed to plaintiffs.
Affirmed in part, reversed in part, and rendered.
NOTES
[1] The employees assert that before a forthcoming retirement date, any remaining compensatory time could be converted into paid leave. Although not at work, they would not officially retire until all the compensatory leave had been used.
[2] For comparison, the annual leave provisions in Section 5 of Executive Order No. 56 contained detailed, specific rules on the use of annual leave and reimbursement for unused leave.