591 So.2d 690 (1991)
Gene KNECHT, et al.
v.
The BOARD OF TRUSTEES FOR STATE COLLEGES AND UNIVERSITIES AND NORTHWESTERN STATE UNIVERSITY.
No. 91-C-0751.
Supreme Court of Louisiana.
December 2, 1991.
*692 Donald G. Kelly, Jeffrey H. Thomas, Kelly, Townsend & Thomas, Natchitoches, for applicant.
William J. Guste, Jr., Atty. Gen., Norman W. Ershler, Asst. Atty. Gen., for respondent.
DENNIS, Justice.
The issue is whether plaintiffs had a vested right in accumulated, but unused, compensatory leave accrued pursuant to their governmental employer's policy of compensating overtime by granting paid leave. If the plaintiffs had such a right, we must determine whether they are entitled to damages for the employer's refusal to grant the paid leave.
Plaintiffs, thirty-two current and former employees of Northwestern State University, sued the Board of Trustees for State Colleges and Universities and Northwestern State University to recover for the loss of a total of 47,584 hours of compensatory leave which they accumulated during 1974 through 1979. The accrual of the hours had been authorized in 1974 by the Board's implementation of Executive Order No. 56 ["EO 56"], which empowered executive appointing officers to permit employees who worked more than their regular hours to earn and accrue hours of compensatory leave time equal to hours of overtime worked. The trial court concluded that the plaintiffs had a limited property interest in the accrued compensatory time. It restored accrued compensatory time to currently employed plaintiffs but refused to award money damages to those who had already retired.
All plaintiffs appealed. The First Circuit Court of Appeal reversed, holding that none of the plaintiffs had a vested property interest in accrued compensatory time, so that no remedy in any form was warranted. Knecht v. Board of Trustees, 577 So.2d 730 (La.App. 1st Cir.1991). We granted certiorari, 580 So.2d 662, to determine whether the Board was obliged in contract to its employees to grant leave time with pay as compensation for overtime worked pursuant to the Board's policy and practices at Northwestern.
We reverse. The plaintiffs were contractually entitled to use the compensatory time as time off with pay. Because the employer failed to perform its contractual obligation to grant the compensatory time in accordance with its policy, the plaintiffs are entitled to damages, and to interest from date of judicial demand until paid, and costs of these proceedings. Each employee is entitled to damages equivalent to the value of his or her uncompensated overtime work, calculated at the employee's regular rate of pay.

FACTS
The plaintiffs comprise a class of 32 unclassified state employees who worked for Northwestern State University from 1974 through 1979. Unclassified employees are those whose relations with their employer, the state, are not governed by the civil service provisions. La. Const. art. X, § 2(9). All class members were salaried personnel hired on an annual basis. Their employment contracts did not originally contain a promise that overtime work would be rewarded with accrued leave time. Rather, the Board's compensatory *693 time policy was an implementation of Executive Order No. 56, effective January 1, 1974, which stated:
Section 7. Compensatory Leave.
7.1 An appointing authority may require that an employee work on a holiday or at any time he is not regularly required to be on duty. In such cases the appointing authority may permit the employee to earn compensatory leave equal to the number of extra hours he is required to work, unless he has been paid for such extra time.
7.2 Earned compensatory leave shall be promptly credited to the employee and may, with the approval of the appointing authority, be used by him at a future time. Compensatory leave may be accumulated without limitation.
7.3 An appointing authority may require an employee to use his earned compensatory leave at any time.
In January 1980 the Board acted to "suspend[], effective December 20, 1979, the practice of earning and taking compensatory leave by unclassified personnel at the institutions governed by the Board and instructed the Executive Director to notify these institutions immediately." There is no evidence that any of the plaintiffs requested pay or time off for overtime worked during the next five years. In 1985, however, plaintiffs sued the Board and Northwestern, alleging that they were entitled, either under contract law or the doctrine of equity, for payment for all hours of overtime worked for which leave time or compensation had not been granted. The suit against Northwestern was dismissed on plaintiffs' motion after the Board filed an exception of lack of procedural capacity in Northwestern to be sued. The parties entered a joint stipulation which, in part, set forth the salary of each plaintiff and the total number of hours of accrued time. Based on these figures, the total amount of overtime worked without pay by plaintiffs is equivalent to $543,334.92.
At trial, seven current or retired employees, six of them plaintiffs, testified as to the facts and circumstances that led them to believe that they were entitled to receive compensatory leave for the hours of overtime they worked. Dr. Benny Barron, who was a dean when the compensatory time policy was implemented, testified that he attended a meeting of university administrators at which a copy of EO 56 was distributed and explained. He, like the other six employee witnesses, testified that in order to accrue compensatory time, an employee would have to work overtime at the request of a supervisor. After each overtime stint an employee could enter the approved extra hours on his or her time card for submission to the payroll department. Each payday a cumulative statement of compensatory time off earned appeared on every employee's paycheck. By the same token, when an employee used his compensatory time as paid leave with approval of his supervisor, the time taken as leave was entered on his or her time card and deducted from his cumulative time. In this fashion the employee would receive time off without a reduction in his monthly salary. All seven of the employees who testified had accrued compensatory time in this manner and had used some compensatory time as paid leave according to this procedure. None had ever, before 1979, been denied a request to use compensatory time. All testified that no limitation had been placed on the accrual or the use of compensatory time. Two stated that a co-worker, who was deceased at the time of trial, drew upon his accrued compensatory time for approximately six months immediately prior to his retirement, coming in to the office every two weeks only to prepare time cards reflecting hours of compensatory time used for the period. According to one of the plaintiffs a former employee used his compensatory time as one-year paid leave of absence in order to run for public office. Six of the plaintiffs testified that they had unused leave time remaining that they intended to use as paid leave before retirement when the Board resolved to end the compensatory time policy in 1979. Even after 1979, the university continued to issue paychecks to the plaintiffs showing an accounting for accumulated compensatory hours owed.
*694 The Board presented no evidence whatsoever to controvert the plaintiffs' testimony. Its single witness, Dr. William Junkin, retired executive director of the Board, merely testified that the Board had become aware, by way of either newspaper accounts or audit reports, of the accumulation of considerable amounts of compensatory time on the part of employees at Northwestern. The Board then decided to do away with the policy. Dr. Junkin wrote a letter, at the instance of the Board, to the presidents of its institutions to say that compensatory time would no longer be granted to unclassified employees. No evidence was presented to show that the Board had not authorized the accrual of any of the overtime hours or that the Board, expressly or impliedly, placed any limitations other than those expressed in EO 56 Section 7 on the accrual or use of compensatory time.
The trial court decided that the plaintiffs had a limited property interest in the accrued hours which permitted them to take compensatory leave before they retired. It restored the current employee-plaintiffs' accumulated time, but denied the retired plaintiffs any relief. The court of appeal reversed the trial court's ruling and dismissed plaintiffs' suit, deciding that the plaintiffs had at most a privilege which the Board could revoke at any time, not a vested property interest. Knecht v. Board of Trustees, 577 So.2d 730, 732 (La.App. 1st Cir.1991).
We reverse the court of appeal judgment, vacate the trial judgment, and order that each plaintiff, whether currently or formerly employed by the Board at Northwestern, be awarded the amount of his or her hourly pay as stipulated in the joint stipulation, plus interest from date of judicial demand until paid, and all costs. We remand the case for entry of judgment in accordance with the reasons set forth below.

CONTRACTUAL RIGHTS OF PLAINTIFFS
Under the facts and circumstances of this case, once an employee worked overtime pursuant to the compensatory leave policy, a bilateral contract was complete, and the Board was obligated to grant paid leave subject only to the approval of the employer as to the particular time at which the leave was to be taken.
Under the law of conventional obligations as it was enunciated by the Civil Code articles in effect during the years 1974-79, consent is an essential element of the conventional obligation. La.Civ.Code art. 1779 (1870). Consent may be given expressly or by implication, La.Civ.Code art. 1780 (1870), but must be evinced in some manner that causes it to be understood by the other party. La.Civ.Code art. 1797 (1870). One who proposes the contract is bound if the offer is made in terms, whether by words, actions, silence or inaction, which evince a design to give the other party the right of concluding by assent, and the other party timely assents. Art. 1802, 1811 (1870). When consent is not express, or when the law creates no presumption of consent, the trial judge is to ascertain, from the facts and circumstances of the case, whether the parties' consent is to be implied from them. Art. 1818 (1870). When the intent of the parties is doubtful, the court may look to the manner in which that intent was carried out by both parties, or by one with the express or implied assent of the other. Art. 1956 (1870); 1 Litvinoff § 135 at p. 227 (1975).
An obligation arising out of a contract extends not only to what is expressly stipulated but also to everything that by law, equity, or custom is considered incidental to the particular contract. La.Civ. Code art. 1903 (1870). For this reason, in cases in which a party's subjective intent differs inadvertently from his or her declared intent, the court may find a party to be bound to more than he actually intended. 1 Litvinoff, supra, at p. 228. In such cases, the court should ascertain whether the declared intent, as determined from the clear words, or from the facts and circumstances when the words are unclear, could have reasonably led the other party to rely on it. Art. 1818 (1870); 1 Litvinoff, supra, at 227-229.
*695 Nearly every state has determined, using precepts similar to our civilian principles, that when an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions, the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised benefit. See, e.g., T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1976); Hoffman La-Roche v. Hugh Campbell, 512 So.2d 725 (Ala.1987); Gesina v. General Electric Corp., 780 P.2d 1376 (Ariz.Ct.App.1989); Sterling Drug Inc. v. Oxford, 294 Ark. 239, 743 S.W.2d 380 (1988); Libby v. Calais Regional Hospital, 554 A.2d 1181 (Me.1989); Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880, 893 (1980); Southwest Gas Corp. v. Ahmad, 99 Nev. 594, 668 P.2d 261 (1983); Gilman v. County of Cheshire, 126 N.H. 445, 493 A.2d 485 (1985); Cantor v. Berkshire Life Insurance Co., 171 Ohio St. 405, 171 N.E.2d 518 (1960); Bellomini v. State Employees' Retirement Board of Pa., 498 Pa. 204, 445 A.2d 737 (1982); Textile Workers Union of America, Local #513 v. Brookside Mills, 203 Tenn. 71, 309 S.W.2d 371 (1957); Ferraro v. Hyatt Corp., 124 Wis.2d 154, 368 N.W.2d 666 (1985). Courts have applied this rule to the governmental employer in the same manner that it applies to the private employer, rejecting the argument that a governmental employer bestows benefits on its employees subject to the employer's whim. Gilman, supra; Bellomini, supra.
After the passage of the Fair Labor Standards Act, 29 U.S.C. 201, et seq., and the numerous state labor statutes, only sparse litigation occurred under state contract law regarding the rights of employees to overtime and compensation for services, rendered. See C. Bakaly & J. Grossman, The Modern Law of Employment Relationships § 6.8 (1991). A few courts have been confronted with such issues, however, and have used contract principles to determine the rights of employees and employers. For example, our First Circuit Court of Appeal concluded that a governmental employer's policy of granting paid leave for overtime, if well-known and routinely followed, constitutes a legally enforceable contract with the employees subject to it. Jones v. City Parish of East Baton Rouge, 526 So.2d 462 (La.App. 1st Cir.1988). Other decisions have held that such benefits as paid vacation are vested in the employee as a form of additional, deferred compensation and not a gratuity or gift, so that a terminated employee who has accrued vacation time under an implied contract with her employer is entitled to her wages for that time. Suastez v. Plastic Dress-up Co., 31 Cal.3d 774, 183 Cal.Rptr. 846, 647 P.2d 122 (1982); Valeo v. J.I. Case Co., 18 Wis.2d 578, 119 N.W.2d 384 (1963). See also Wil-Low Cafeterias, 111 F.2d 429, 432 (2d Cir.1940) (Hand, J.). If an employee is promised an hour of paid leave in return for an hour of overtime work for which he received no pay in wages, logically the paid leave is a form of deferred compensation, in lieu of wages. Under basic contract principles, once the services are rendered, the right to receive the promised remuneration vests. Suastez, supra.
Applying the principles of our Civil Code, as illumined by the practical experience of other courts applying comparable precepts, we conclude that plaintiffs had a valid and enforceable contract with the Board under which they were entitled to receive paid leave as remuneration for overtime worked. The Board's consent was implied by the facts and circumstances. EO 56 empowered the Board to hold out to the unclassified employees of Northwestern the incentive that they would receive paid leave when they worked overtime without pay. In turn, the Board's actions were of a character to lead the plaintiffs reasonably to expect that they would receive paid leave commensurate with the number of approved hours of overtime worked. According to the uncontradicted testimony at trial, the Board's agents at Northwestern put in place a set of procedures whereby the employees earned, accrued and took paid leave in accordance with EO 56; and pursuant thereto the employees received monthly accountings of the balance of leave due to each overtime worker. These actions evinced *696 consent by the Board to compensate plaintiffs for their overtime with paid leave. When the plaintiffs worked overtime, accepting the Board's offer to grant compensatory time off in equivalent hours according to its policy, a binding contract was formed. The actions of the Board in allowing employees to accrue unused leave without limitation, to take paid leave that they had accrued under the practices established at the university, and to carry it over from year to year are evidence that the plaintiffs were justified in their expectation that their accrued leave time would not be revoked.
The Board argues that EO 56 by its terms gave the Board the power to refuse to grant an employee the right to take paid accrued leave. This is clearly a post hoc interpretation of EO 56 that both strains its words and conflicts with its application by the Board during the period in question. From 1974 through 1979 the Board honored its obligations to allow employees to earn, accrue, use and retire early on compensatory leave time. According to the record presented for our review, the Board during this period never refused an employee the right to use his or her accumulated leave time. In fact, we have been unable to find any instance in which an employee's request to use accrued leave exactly as he or she desired was not approved. Moreover, the evidence indicates that employees were allowed to accumulate compensatory leave time year after year and to use it to take early retirement. In addition, the terms of EO 56 state that "earned compensatory leave shall be promptly credited to the employee and may, with the approval of the appointing authority, be used by him at a future time," and that the employer "may require an employee to use his earned compensatory leave at any time." The whole compensatory time program would be only an illusion if the section were interpreted to mean that leave could be withheld arbitrarily, rather than that it must be granted, subject only to the approval of the employer as to the particular time that it could be taken. In sum, the Board's present argument is inconsistent with the plain words of the executive order and with its own contemporaneous construction of the order.
The Board makes several other arguments in an attempt to show that no enforceable contract was formed. It argues that the institution of the compensatory time policy was a gratuity and that the plaintiffs have never been entitled to remuneration for overtime because they were salaried employees whose contract entitled them to a certain sum per year regardless of time worked. These arguments are irrelevant. The words and actions of the Board led the employees reasonably to believe the Board's offer was intended as a quid pro quo for their additional work without pay. It strains credulity to assert that the Board intended the compensatory leave policy only as a gratuitous gesture. Even if that were the case, the Board cannot recede from the contract after having induced the employees' reasonable reliance and performance.
The Board also argues that as a governmental employer endowed with constitutional authority to manage and supervise the institutions under its control, see La. Const. art. 10, § 2, it had the power to abolish, even retroactively, whatever time may have been accumulated. The ability to accrue leave time, it says, was a privilege, which can now be revoked at its whim. We reject these circular arguments because they are founded in the Board's failure to recognize that the plaintiffs had a contractual right, a property interest, in the accumulated leave.

DAMAGES
The court of appeal did not address the issue of damages because it concluded that plaintiffs had no rights in the accrued leave. The trial court recognized only the rights of the plaintiffs still employed at Northwestern to paid leave at the approval of Northwestern.
Under the contract between the Board and its employees, the Board owed obligations to do, rather than merely to give or to pay money, because a system of actions, besides that of delivery, was necessary *697 to the performance of its obligations. La.Civ.Code art. 1905 (1870). See A. Levasseur, Louisiana Law of Obligations in GeneralA Precis (1988) at pp. 8-12. The remedy for breach of a contract to do is either specific performance or damages, at the option of the obligee, Art. 1926, and the plaintiffs have chosen to receive damages.
Damages for inexecution of a contract to do are measured by the amount of the loss sustained by the obligee and the profit of which he has been deprived. La. Civ.Code art. 1934 (1870). When the obligor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. Id.
Section 7 of EO 56 states that one hour of leave time is to be granted for every hour of approved overtime worked, "unless the employee has been paid for such time." We think it was well within the contemplation of the Board and the employees that one hour of overtime was worth one hour of pay based on the salary of the employee. The amount of pay for each plaintiff is contained in the joint stipulation. Thus we will award each plaintiff compensatory damages of one hour of pay as stipulated for every hour of accrued leave, also as stipulated.
Plaintiffs are entitled to interest on damages due from the date of judicial demand until paid. When the obligor who owes an obligation to do has actively violated the contract, damages, including interest, are due from the moment of the breach, and the obligee is not required to put the obligor in default to be entitled to his action. La.Civ.Code art. 1932 (1870); Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978); see Mini-Togs Products, Inc. v. Wallace, 513 So.2d 867 (La.App.2d Cir.), writ den. 515 So.2d 447, 451 (1987). However, the plaintiffs have not demonstrated that the Board actively breached the contract by its 1979 resolution suspending its compensatory time off policy, or in any other way.
It is not disputed that the Board had the power and the right to make prospective changes in its compensatory leave policy. The Board's resolution declared it would "suspend the practice of earning and taking compensatory leave" but did not state that the suspension was retroactive as well as prospective; nor did it state that the leave accrued prior to the effective date of the resolution could not be used by the employees. In addition, as the plaintiffs have testified throughout the litigation, their paycheck stubs continued to reflect the correct number of accrued hours even after the resolution by the Board, just as they did before the resolution. As far as can be ascertained from the record, all of the plaintiffs were still employed when suit was filed. Some have retired since, and some are still employed in some capacity by the Board. In the case of each plaintiff, the Board could have, on consideration, decided to perform its obligation to grant leave already accrued at any time prior to the filing of suit. The testifying plaintiffs all stated that they intended to take their leave sometime before retirement, but none testified as to any prejudice that they suffered from the delay in the performance of the obligation. None of them could state a time at which they should have been allowed leave but were not. Furthermore, under the terms of the contract as construed above, the Board had the discretion to specify reasonably when the leave could be taken. Thus plaintiffs might not have received their leave until their retirements even if the Board had not suspended its leave policy. We cannot say that the resolution of the Board, when taken together with the fact that the Board continued to acknowledge the plaintiffs' accrual of the hours to date, was an active breach that made it perfectly clear to the plaintiffs that their accrued leave would not be granted. Moreover, according to the evidence, there was no point, until judicial demand was made, at which it was clear that the Board would not perform, or that plaintiffs began to suffer damages by any delay in performance.

*698 CONCLUSION
In sum, we conclude that the court of appeal erred in deciding that the plaintiffs had no contractual right to paid leave. Accordingly, the trial court committed no manifest error in finding that the Board owed plaintiffs an obligation to permit them to use their accrued compensatory hours as paid leave. The trial court erred, however, in failing to award damages for the Board's breach of the contract. The judgment of the court of appeal is reversed. The trial court judgment is vacated and the case is remanded to that court with instructions to render judgment consistent with the opinion of this court, awarding each plaintiff, currently or formerly employed by the Board, the amount of his or her hourly compensation for every hour of accrued leave, in accordance with the joint stipulation, plus interest from date of judicial demand until paid, and all costs of these proceedings.
JUDGMENT OF COURT OF APPEAL REVERSED; JUDGMENT OF TRIAL COURT VACATED; CASE REMANDED TO THE TRIAL COURT FOR ENTRY OF JUDGMENT IN ACCORDANCE WITH THIS OPINION.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I agree with the majority's conclusion that plaintiffs had a property interest in the accumulated leave; however, I disagree with the majority's conclusion that all the plaintiffs are entitled to damages. In my view, only those employees retiring after 1979 who were prevented from using their accrued leave are entitled to damages (employees who retired prior to the 1979 resolution were not prevented from using their leave and should receive no relief). Those employees who are still working should have their rights to compensatory leave restored. In this way, the original intent of the compensatory leave scheme is preserved, and those employees still working are put in the same position as they were prior to the 1979 resolution.