712 So.2d 618 (1998)
Tom Paul SOUTHERLAND, Mildred Bailey, et al., Plaintiff-Respondents,
v.
The BOARD OF TRUSTEES FOR STATE COLLEGES AND UNIVERSITIES, Defendant-Applicant.
No. 97-897.
Court of Appeal of Louisiana, Third Circuit.
April 29, 1998.
*619 Jeffrey Howerton Thomas, Natchitoches, for Tom Paul Southerland, et al.
Richard Phillip Ieyoub, Virginia Anne Anthony, Baton Rouge, for Board of Trustees for State Colleges.
Before DOUCET, C.J., and PETERS and PICKETT, JJ.
PICKETT, Judge.
The thirty one plaintiffs are present and former employees of Northwestern State University who filed suit on December 10, 1992, against the Board of Trustees for State Collages and Universities to recover for the loss of compensatory leave accumulated from working overtime which was no longer being honored by the University. Defendants filed an exception of prescription on the basis that the plaintiffs' claims are subject to the three prescriptive period found in La.Civ.Code art. 3494. After a hearing on the exception, the trial court held that article 3494 did not apply and the matter was subject to the ten year prescriptive period found in La.Civ.Code art. 3499. The Board of Trustees applied for supervisory writs to this court which was denied by finding no error in the trial court. Writs were then sought to the supreme court which were granted on January 9, 1998, and remanded to this court for briefing, argument and opinion.
Previously, our supreme court determined that employees have a vested right in accumulated compensatory leave despite the fact that such right was not originally contained in the employment agreement. Knecht v. Trustees For State Colleges and Universities and Northwestern State University, 591 So.2d 690 (La.1991). In Knecht, 591 So.2d 690, 692-693, thirty-two current and former employees of Northwestern State University filed suit to recover for accrued but unused compensatory leave. In that case, the supreme court reviewed the applicable provisions regarding compensatory leave which also govern the present matter before this court.
The plaintiffs comprise a class of 32 unclassified state employees who worked for Northwestern State University from 1974 through 1979. Unclassified employees are those whose relations with their employer, the state, are not governed by the civil service provisions. La. Const. art. X, Sec. 2(9). All class members were salaried personnel hired on an annual basis. Their employment contracts did not originally *620 contain a promise that overtime work would be rewarded with accrued leave time. Rather, the Board's compensatory time policy was an implementation of Executive Order No. 56, effective January 1, 1974, which stated:
Section 7. Compensatory Leave.
7.1 An appointing authority may require that an employee work on a holiday or at any time he is not regularly required to be on duty. In such cases the appointing authority may permit the employee to earn compensatory leave equal to the number of extra hours he is required to work, unless he has been paid for such extra time.
7.2 Earned compensatory leave shall be promptly credited to the employee and may, with the approval of the appointing authority, be used by him at a future time. Compensatory leave may be accumulated without limitation.
7.3 An appointing authority may require an employee to use his earned compensatory leave at any time.
In January 1980 the Board acted to "suspend[ ], effective December 20, 1979, the practice of earning and taking compensatory leave by unclassified personnel at the institutions governed by the Board and instructed the Executive Director to notify these institutions immediately." There is no evidence that any of the plaintiffs requested pay or time off for overtime worked during the next five years. In 1985, however, plaintiffs sued the Board and Northwestern, alleging that they were entitled, either under contract law or the doctrine of equity, for payment for all hours of overtime worked for which leave time or compensation had not been granted.
....
At trial, seven current or retired employees, six of them plaintiffs, testified as to the facts and circumstances that led them to believe that they were entitled to receive compensatory leave for the hours of overtime they worked. Dr. Benny Barron, who was a dean when the compensatory time policy was implemented, testified that he attended a meeting of university administrators at which a copy of EO 56 was distributed and explained. He, like the other six employee witnesses, testified that in order to accrue compensatory time, an employee would have to work overtime at the request of a supervisor. After each overtime stint an employee could enter the approved extra hours on his or her time card for submission to the payroll department. Each payday a cumulative statement of compensatory time off earned appeared on every employee's paycheck. By the same token, when an employee used his compensatory time as paid leave with approval of his supervisor, the time taken as leave was entered on his or her time card and deducted from his cumulative time. In this fashion the employee would receive time off without a reduction in his monthly salary. All seven of the employees who testified had accrued compensatory time in this manner and had used some compensatory time as paid leave according to this procedure. None had ever, before 1979, been denied a request to use compensatory time. All testified that no limitation had been placed on the accrual or the use of compensatory time. Two stated that a co-worker, who was deceased at the time of trial, drew upon his accrued compensatory time for approximately six months immediately prior to his retirement, coming in to the office every two weeks only to prepare time cards reflecting hours of compensatory time used for the period. According to one of the plaintiffs a former employee used his compensatory time as one-year paid leave of absence in order to run for public office. Six of the plaintiffs testified that they had unused leave time remaining that they intended to use as paid leave before retirement when the Board resolved to end the compensatory time policy in 1979. Even after 1979, the university continued to issue paychecks to the plaintiffs showing an accounting for accumulated compensatory hours owed.
In the present case, in the trial court's written reasons for denying the defendant's exception of prescription, Judge Whitaker held that prescription began to run on July *621 31, 1988,[1] and that the arrangement between the employees and the defendants was much more in the order of a deferred compensation scheme rather than one of a salary or a wage as the defendant suggests. As deferred compensation, the applicable prescription is not the three year period found in Article 3494, but the general ten year prescription in Article 3499. Coon v. Anadrill/Schlumberger, Ltd., 640 So.2d 705 (La. App. 3 Cir.1994). It is from the later trial court decision that defendant now appeals.[2]
The prescription period to be applied to compensatory leave is res nova. Statutes of prescription must be strictly construed. Guillot v. Guillot, 346 So.2d 813 (La.App. 1st Cir.), writ denied, 350 So.2d 40 (La.1977). The general ten year prescriptive period for personal actions is pronounced in La.Civ.Code art. 3499; "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." Provisions of the Code which establish lesser terms of prescription should be restrained to the particular cases which they regulate, and to what is expressly included in their dispositions. Lacoste v. Benton, 1848, 3 La.Ann. 220. The relevant portion of La.Civ. Code art. 3494 reads as follows:
The following actions are subject to a liberative prescription of three years:
(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board;
We agree with the trial court that compensatory leave does not easily fit into the category of a wage or a salary. The trial court based its decision on the use of the accumulated leave with retirement planning. The trial court made the observation that employees could use this compensatory leave instead of annual and sick leave. This would allow employees to accrue annual and sick leave, thereby increasing the calculation of "membership service" towards an employee's retirement plan. Also reference was made, as did the supreme court in Knecht, that employees utilized the accrued compensatory leave immediately preceding retirement to in effect make an early retirement.
When the supreme court determined in Knecht, 591 So.2d 690, that the employees of Northwestern had an enforceable contract right to the compensatory leave, the court examined the nature of the right. The court made several references to the compensatory leave as a benefit.
Nearly every state has determined, using precepts similar to our civilian principles, that when an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions, the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised benefit. Courts have applied this rule to the governmental employer in the same manner that it applies to the private employer, rejecting the argument that a governmental employer bestows benefits on its employees subject to the employer's whim.
....
Other decisions have held that such benefits as paid vacation are vested in the employee as a form of additional, deferred compensation and not a gratuity or gift, so that a terminated employee who has accrued vacation time under an implied contract with her employer is entitled to her wages for that time.... If an employee is promised an hour of paid leave in return for an hour of overtime work for which he received no pay in wages, logically the paid leave is a form of deferred compensation, *622 in lieu of wages. [Citations omitted; emphasis added.]
Knecht, 591 So.2d 690, 695 (La.1991).
We agree with the trial court and the supreme court in their characterization of compensatory leave as a benefit of deferred compensation. As such, the claim for these benefits is not governed by article 3494, but rather the general prescriptive period of ten years for personal actions of article 3499. In reviewing article 3494, we cannot find legislative intent to indicate that the benefit at issue should be included as "compensation for services rendered," given that compensatory leave is not expressly included and is much more than just a wage or salary.
Accordingly, for the reasons stated above, the judgment of the rial court is affirmed. All costs of this appeal are assessed against the defendant.
AFFIRMED.
NOTES
[1] July 31, 1988 was the last day in which the plaintiffs' paycheck reflected the accrued compensatory leave time which interrupted prescription. Prescription began to run on the date of retirement for those plaintiffs who retired before July 31, 1988. This decision of the trial court was before this court, as neither party sought its appeal.
[2] The defendants original sought review of both decisions when applying for supervisory writs. Now that this matter is on remand from the supreme court, defendants only assigned as error and brief the issues concerning prescription.