1 Judge DAVID S. GORBATY.
In this appeal, plaintiffs contend that the trial court erred in granting the City of New Orleans (“the City”) a credit for any sick leave amount paid to any retired member of the class. In its cross-appeal, the City argues that the trial court erred in finding that an enforceable contract between the City and the officers of the New Orleans Police Department (“NOPD”) was created. For the reasons set forth below, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY

Plaintiffs aver that prior to July 10, 1980, the City of New Orleans, through its police department supervisors, routinely allowed police officers to “run out” then-accrued sick leave in anticipation of retirement. This “custom” arose, the plaintiffs say, because their supervisors allowed them to continue drawing their regular salaries without requiring them to report to work, until they no longer had any accumulated sick leave. The plaintiffs claim that this “unofficial policy,” which allowed them one day off for every day of accrued sick leave, was explained | Rto them at the time they were hired, and that it was used as an inducement for employment.
During the period of time in question, the City had an official written policy, evidenced by Chief Administrative Office Policy Memorandum No. 86, originally issued October 20, 1971, that allowed retiring city employees to convert accumulated sick leave to salary at the rate of one day of salary for every five days of accrued sick leave. That written policy was revised several times between 1971 and 1980, and renumbered Memorandum No. 15 at one point, but continued to provide basically the same benefits throughout that period. Then, on July 10, 1980, the Civil Service Commission, which governs employment of many city employees, including police officers, instituted a rule officially adopting the City’s policy allowing employees one day of salary for every five days of accrued sick leave.
Upon promulgation of the new Civil Service rule, the plaintiffs filed this suit against the City, claiming that the existence of the long-term practice allowing police officers to “run out” their accrued sick leave had resulted in an implied contract entitling them to do the same. The plaintiffs claimed that the five-to-one rule deprives them of a vested property right without due process of law.
After discovery, the City filed a motion for summary judgment, arguing that the plaintiffs were not entitled to the benefit they sought because no contractual agreement existed between the City and the police officers and because the alleged contractual agreement violated formal written City policy and Civil Service rules. | aThe trial court granted the motion for summary judgment; this court reversed and remanded.
After a trial on liability only, the trial court rendered judgment in favor of the *1114 plaintiffs. This judgment was corrected and reissued on March 27, 1998. Both plaintiffs and the City subsequently appealed.

DISCUSSION

The City assigns as error the trial court’s finding that the practice of allowing police officers to “run out” sick leave amounted to an enforceable contract. In a related assignment of error, the City avers that as a matter of state law, the alleged contract was void, and therefore no vested property interest was ever created.
The City argues that Civil Service Rules VII, section 2.2(a) and VII, section 2.2(c) limit the use of sick leave to active employees that are legitimately ill or injured. Thus, the alleged contract, even if valid, is contrary to the law and consequently null and void, and did not create any vested property interest. In support of its argument, the City cites Jack A. Parker & Associates, Inc. v. State of Louisiana, 454 So.2d 162 (La.App. 1 Cir.1984), in which the court declared that the State could have a contract which violated a civil service rule declared void under La.C.C. art. 11 because it “derogated from the force of laws made for the preservation of public order and good morals.” Id. at 167. The City also contends that no policy-making official of the City ever approved the practice of “running Lout” sick leave, and that the plaintiffs engaged in subterfuge to comply, on paper, with the Civil Service rules regarding the use of sick leave.
Determination of whether an implied contract was formed by the facts and circumstances in this case is controlled by the Louisiana Supreme Court’s decision in Knecht v. Board of Trustees for State Colleges & Universities, 591 So.2d 690 (La.1991). In Knecht, the court found that unclassified university employees had a valid, enforceable contractual right to accrued compensatory time which arose when the employees worked overtime pursuant to the board’s policy permitting them to receive paid time off in exchange for working overtime. Id. The court found that a bilateral contract was completed when the. employees “accepted” the board’s “offer” by working the requested overtime hours and that the board thus became obligated to provide the paid leave. Id.
Although the policy at issue in Knecht was written, the court cited Jones v. City Parish of East Baton Rouge, 526 So.2d 462 (La.App. 1st Cir.1988), which found, “A governmental employer’s policy of granting paid leave for overtime, if well-known and routinely followed, constitutes a legally enforceable contract with the employees subject to it.” Id. 591 So.2d at 695. A review of the Jones case reveals that the policy at issue there was not written, but “was well known and routinely | ¡¿followed.” 526 So.2d at 465. The fact that the Supreme Court cited Jones with approval indicates that the rule established by Knecht applies to unwritten, as well as written, policies, if the policy is “well known and routinely followed,” Id., or if the policy is considered incidental to the contract “by law, equity, or custom.” Knecht, 591 So.2d at 694.
In its reasons for judgment in the instant case, the trial court stated:
Plaintiffs’ witnesses, present and former police officers, testified that during recruiting and training, they were advised by their ranking and supervising officers of the policy of running out sick leave and encouraged to act on that policy... .This informal agreement was acted upon by the officers at issue, evidenced by the testimony regarding the notation of each officer’s sick leave in the Beat Roll Books and employment records which reflect that between 1976 *1115 and 1978, thirteen percent of the police officers who retired during that time had run out their sick time. Evidence presented by the City that any of those officers acting upon their understanding of running out sick time were not disciplined in any way for their actions is noticeably lacking. Further, according to the testimony and affidavits, the police department and the City were aware of the benefit the police department (and consequently the City) would receive by discouraging frivolous sick days and preventing manpower shortages.
The City’s argument that no one with the formal authority to bind the City consented to this informal agreement does not hold here. It was shown at trial that although no one with express authority bound the City, those with the authority to do so knew about the practice and did nothing to hinder it or punish participating officers. Further, those with the express authority to bind the City knew that commanding and ranking officers were presenting the option to possible recruits and rookies and that those officers possessed the implied authority to bind the City, at least in the eyes of the participating officers.
It is well settled that a factual finding by the trial court will not be disturbed on review absent an abuse of discretion or unless it is clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). After reviewing the record, we find that the trial court’s determination that a valid contract was formed was reasonable and not manifestly erroneous.
Further, we note that the rule in Parker v. State of Louisiana relied upon by the City is limited to civil service rules that are “reasonable and not violative of basic constitutional rights.” Id. at 165. Plaintiffs claim they are being deprived of a vested property right which, under Bazley v. Tortorich, 397 So.2d 475 (La.1981), is a basic constitutional right. Parker provides that if the civil service rules at issue deprive plaintiffs of a vested property right, contracts made in violation of those civil service rules are not necessarily null and void. Consequently, the contract between the City and the officers of the police department is not violative of the civil service rules and, thus, not null.
In their sole assignment of error, plaintiffs allege that the trial court erred in granting the City a credit for any sick leave amount paid to any retired member of the class, since the City did not raise such payment as an affirmative defense in its pleadings, nor did it present any proof of such payments at trial.
La. C.C.P. art. 1005 is entitled “Affirmative defenses,” and provides:
The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense....
Comment (b) to the article states, “Thus ‘extinguishment of the obligation in any manner’ covers payment and release .... as well as all of the modes of extinguishing obligations provided in Art. 2130 Civil Code, except prescription.... ”
The City failed to plead the defense of payment, filing instead only a general denial. A mere general denial cannot suffice to prove an affirmative defense. We find that this assignment of error has merit.

CONCLUSION

Accordingly, for the foregoing reasons, the portion of the trial court’s judgment *1116 affording the City credit for any sick leave amounts paid is reversed. The remaining parts of the judgment are affirmed.

AFFIRMED IN PART; REVERSED IN PART.