Dear Mayor Smith:
This office is in receipt of your request for an Attorney General's opinion regarding the legal proprietary of the City of Zachary paying its employees for accrued and vested annual leave prior to their separation from employment. According to your correspondence, the City of Zachary is currently liable for accrued and vested annual leave to City employees in an amount in excess of $300,000, and the City's auditor has recommended that the City attempt to reduce this liability. It is our understanding that the City is considering paying employees for some of this accrued and vested liability now, thereby reducing the amount it will owe to current municipal employees at the time of their separation from service. Your letter states:
 "the City would like to `buy back' this vested and accrued annual leave from its employees. The City does not desire to purchase any annual leave of any employee for a current year; the City only wants to pay an employee for unused annual leave which has been banked. This unused annual leave is a legal obligation of the City to be paid sometime in the future. It is not a question of if this banked annual leave will have to be paid, but only a question of when this annual leave will be paid
* * *
 Kindly advise me whether or not the City of Zachary can reduce its liability by buying back accrued and vested annual leave from its employees. If the City can reduce its liability by paying employees for their accrued and vested annual leave, does the employee have the right to refuse to accept the monetary payment and retain his or her accrued and vested annual leave?"
You have provided us with a copy of Section 10.1 of the rules governing the Zachary municipal civil service employees. Although Section 10.1(B)(4), (5) (6) provide that upon termination of employment an employee shall be paid for accumulated annual leave upon termination of employment, limited by a maximum amount that can be carried over from year to year, it does not provide for payment prior to separation from service.
This office has previously determined that a political subdivision can pay its employees for their unused and accrued vacation and sick leave, as long as a formal policy regarding the payment of same, applicable to all similarly situated employees, is in place and established. Attorney General's Opinions Nos. 97-254, 94-284, 90-572, 80-981, 77-1020. Attorney General's Opinions Nos. 78 — 657, 77-1351 and 77-1034, which reached a contrary conclusion, are hereby recalled. We see no legal distinction between a situation in which employees are paid the equivalent of their salary, while on vacation or upon separation of employment, as annual leave and a situation in which employees receive, pursuant to a formally adopted policy, a lump sum in lieu of annual leave. In accord: Attorney General's Opinion 97-254.
In Attorney General's Opinion No. 94-203, Asst. Attorney General James M. Ross opined, with regard to annual leave earned by parochial employees, that annual leave benefits are defined and limited by the rules, regulations and ordinances governing the employment and are vested rights. He further opined that ordinance changes can not reduce vested benefits, but may expand them. Although written with regard to Parish employees, the principals enunciated in Opinion 94-203 are applicable to your request. Opinion No. 94-203 pertinently provides:
 annual leave is a vacation benefit providing time off with pay for the employee while he is employed
* * *
 "Annual leave is benefit provided by the employer and is part of the contract of employment between the employer and employee, see Knecht v. Bd of Trustees, 591 So.2d 690, (La. 1991). The nature of the benefit is disclosed, defined, and limited by rule and statute and in this case, the Parish ordinance. Once the benefit is earned, it becomes a vested right in the employee. The benefit cannot be retroactively impaired or reduced by changing the rules under which it can be paid, Jones v. City Parish of East Baton Rouge, 526 So.2d 462 (La.App. 1 Cir. 1988)."
Applying these principles to your question, we find that the City of Zachary can "buy back" the accrued and vested annual leave of employees who are willing to accept payment for same, prior to separation from employment, but only after adoption by the City of a formal policy and appropriate rules, regulations or ordinances relative to the payment for, or "buy back" of, accrued and vested annual leave.
Since previously accrued annual leave is a vested right earned by City employees under the City's existing policy and rules, which vested rights cannot be retroactively impaired, it is our opinion that employees do have the right to refuse to accept the monetary payment and retain their previously accrued and vested annual leave.
In our telephone conversation regarding your opinion request, we discussed the legality of the City changing its annual leave policy with regard to leave earned in the future, as an additional way of limiting the amount of leave municipal employees could "bank" for purposes of receiving payment for same upon separation of service. In this regard, we direct your attention to Opinion No. 94-203, citied above, a copy of which is enclosed herewith. I believe that opinion makes it clear that political subdivisions can amend their policies and rules regarding the "banking" of leave for purposes of receiving of payment for same upon separation of service, as long as the vested rights already accrued to current municipal employees are not impaired thereby.
Trusting the above answers your questions, we remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ________________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI/JMZB/dam
Date Released: September 11, 2003
Enclosure
OPINION NUMBER 94-203
RELEASED JULY 5, 1994
61 — LAWS — General
92-A-2(e) — RETIREMENT — Parochial Employees
Annual leave benefits for Parish employees are defined and limited by the rules, regulations and ordinances governing that employment and are vested benefits. Ordinance changes can not reduce vested benefits but may expand them. Employees who were entitled to payment of unlimited leave balances are vested with those balances prior to the limit, and future limits cannot impair those rights or retroactively reduce them.
Honorable Glenn W. Alexander District Attorney Thirty-eighth Judicial District P.O. Drawer 280 Cameron, Louisiana 70631
Dear Mr. Alexander:
Your opinion request to the Attorney General has been referred to me for research and response. Your request concerns the payment of annual leave benefits to retiring employees of Cameron Parish. The underlying facts causing the question involve changes in the parish's policy on payment of accumulated annual leave.
Your question is:
 "Are employees who were employed prior to these several changes in leave policy, beginning in 1988, entitled to receive the full amount of their annual leave accumulations or are they limited to the $3,000.00 limit imposed by a June 1, 1992 Police Jury Ordinance?"
The factual basis is as follows:
 1. On February 1, 1977 the police jury enacted an ordinance regarding the use of annual leave and stating that "upon resignation, death, removal or other termination of employment of an unclassified employee," annual leave credited to his account shall be paid to him or his heirs and that said payment shall not exceed $1200.00.
 2. On September 29, 1988 that ordinance was amended to delete the $1200.00 limitation. The language, "shall be paid to him or his heirs" was retained.
 3. On July 2, 1990 Sec. 2.23 of the ordinances was amended by adding the language "except that such payment shall not exceed $3,000.00".
 4. On June 1, 1992 Sec. 2-23 was again amended, retaining the $3,000.00 limit, and specifically referencing leave earned after June 1, 1992. The amended ordinance allowed the use of annual leave to enhance the employee's retirement pension.
All of the ordinances require that the annual leave be earned in accord with established leave regulations and that daily attendance records be maintained.
Initially we note that annual leave is a vacation benefit providing time off with pay for the employee while he is employed. There are also no limitations on the carryovers of annual leave by employees in the ordinances.
The legal principles applicable to your question are set out below:
 Annual leave is a benefit provided by the employer and is part of the contract of employment between the employer and employee, see Knecht v. Bd. of Trustees, 591 So.2d 690, (La. 1991). The nature of the benefit is disclosed, defined, and limited by rule and statute and in this case, by the Parish ordinance. Once the benefit is earned it becomes a vested right in the employee. The benefit cannot be retroactively impaired or reduced by changing the rules under which it can be paid, Jones v. City Parish of East Baton Rouge, 526 So.2d 462 (La.App. 1 Cir. 1988.)
Applying these principles to your question we find as follows:
 Employees earning annual leave and leaving service for the reasons listed in the ordinance, From 1977 until the 1988 amendment, were clearly limited to a $1,200.00 payment upon separation from service because that limit was a part of the benefit. Employees leaving service after the 1988 amendment lifting the limit were clearly entitled to be paid all of their annual leave hours (without limitation). All employees with annual leave balances standing to their credit at the time of the July 2, 1990 amendment, limiting the terminal payment to $3,000.00 were entitled or vested at that unlimited pre-July 2, amount, see Jones and Knecht supra. For example, if an employee had $10,000.00 in leave accumulations prior to July 2, 1990 he is entitled to be paid that amount regardless of the $3,000.00 limit imposed thereafter. The 1990 and 1992 ordinance amendments limit the amount now payable but cannot impair the vested rights in place prior thereto. Any leave earned since those amendments in 1990 and 1992 is so limited.
Therefore, it is the opinion of this office that those employees who had leave balances in excess of $3,000.00 prior to July 2, 1990 must be paid at least the amount standing to their credit on July 2, 1990 if that amount is greater than $3,000.00 and that greater amount is still in their account. They are entitled to the amount of leave credited July 2, 1990 or $3,000.00 whichever is greater, if they still retain the greater amount when they became eligible for the payment. This computation is limited by the fact that if the employee reduces his leave below the peak amount, pre-1990, he may not get paid for any increase over that reduction because he is now earning leave, the payment of which is restricted. Any leave earned subject to the $3,000.00 limitation is subject to that limitation as to payment. Any balances after such payment shall be used in accord with the ordinance or could have been used for its intended purpose, namely, time off with pay.
Trusting the above answers your questions we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
BY: JAMES M. ROSS Assistant Attorney General RPI/JMR:cdw