McClendon, j.
l2The City of Slidell seeks review of a trial court judgment declaring that a former employee was entitled to continue to participate in the city’s health care plan and denying its exception raising the objection of prescription. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Dean Born was employed by the City of Slidell from April 30, 1984 through August *728 1, 2008, at which time Mr. Born began drawing retirement benefits. At the time of Mr. Born’s retirement, a city ordinance (section 21 — 21(b)(1)) provided that a city employee who met certain requirements might elect to continue to participate in the city’s health insurance plan.[1] In that event, the city would pay the cost of the retired employee’s city medical plan (the “City Plan”).[2]
On August 26, 2008, the City amended the referenced ordinance to require city retirees, upon reaching the age of sixty-five, to apply for Medicare coverage, with the City required to pay Medicare Advantage at no cost to the retiree. The ordinance also provided that only those retirees who were ineligible for Medicare would be allowed to continue to participate in the City Plan to the same extent as prior to reaching the age of sixty-five.[3]
|sMr. Born turned sixty-five on July 26, 2018. On May 1, 2013, the City, in light of Mr. Born’s age-based Medicare eligibility, sent Mr. Born a letter informing him that he was required to: (1) enroll with the City’s Humana Group Medicare Plan, or (2) present adequate documentation to the City that he was not Medicare eligible. Mr. Born objected to the City requiring him to enroll in Medicare. In response, the City advised that it intended to terminate his City Plan coverage on July 26, 2013.[4]
On July 25, 2013, Mr. Born filed a “Petition for, Declaratory Judgment, Temporary Restraining Order, Preliminary Injunction and Permanent Injunction” seeking a declaration of his right to continued health coverage under the City Plan and an injunction prohibiting the City from removing him from the City Plan.
In response, the City filed a peremptory exception, urging that Mr. Born’s claims were prescribed insofar as they were claims for compensation subject to a liber-ative prescription period of three years. The City contended that the prescriptive period began to run when it amended the ordinance and that Mr. Born’s suit filed *729 nearly five years post-amendment was untimely.
At a hearing on October 23, 2013, the trial considered all claims asserted in Mr. Born’s petition as well as the City’s peremptory exception. Following the hearing, the trial court took the matter under advisement.[5] The trial court subsequently issued written reasons for judgment, denying the City’s exception and declaring that Mr. Born was entitled to continue to participate in the City Plan, with the City to pay 100% of the coverage premium. On November 14, 2013, the trial court signed a written judgment in accord with its written reasons, |4granting Mr. Born’s declaratory judgment and enjoining the City from removing Mr. Born from the City Plan.
The City has appealed, assigning the following as error:
1. The trial court erred in finding Mr. Born’s claim was not prescribed.
2. The trial court erred in finding the City was obliged to keep Mr. Born on its Employee Medical Plan and pay 100% of the premium associated with the Plan for Mr. Born and his family.
DISCUSSION
In its first assignment of error, the City contends that Mr. Born’s claim was prescribed when it was filed. The City notes that contributions to retirement plans, including health benefits, are a form of deferred compensation. See Fishbein v. State ex rel. Louisiana State University Health Sciences Center, 04-2482 (La.4/12/05), 898 So.2d 1260, 1266. Such contributions are compensation for services rendered and are subject to the three-year prescriptive period found in LSA-C.C. art. 3494.[6] Fishbein, 898 So.2d at 1266. This prescription commences to run from the day payment is exigible. LSA-C.C. art. 3495.
The City notes that shortly after Mr. Born’s retirement in 2008, Section 21-21 was amended, and it changed the City health benefit for retirees sixty-five years of age or older. The City contends that because Mr. Born was vested with a right to the City health benefit at that time, he had three years from the amendment to contest the City’s action. The City concludes that Mr. Born’s action, filed nearly five years after the amendment, is untimely-
In support, the City cites Ledoux v. City of Baton Rouge/Parish of East Baton Rouge, 99-2061 (La.2/29/00), 755 So.2d 877. Therein, a former public employee sought payment for compensatory time he accrued at work | .^between 1977 and 1985. The employee was aggrieved by a policy change to accrued compensatory pay by his city/parish employer in 1985, but did not file suit until several months after he retired in 1995. The city/parish employer filed an exception raising the objection of prescription, In concluding that the matter had not prescribed, the Louisiana Supreme Court reasoned that because the city/parish policy prohibited compensatory time payments from being made before an employee was terminated or retired, the prescriptive period on such claims could not commence until such an occurrence.
*730 Accordingly, the employee’s “right to claim payment for compensatory time was not exigible until he retired in 1995.” Id. at 880.
The City, relying on Ledoux, contends that Mr. Born’s right to claim payment for compensatory services was exigible at the time he retired. We disagree. For the following reasons, we conclude that the claim was not exigible until Mr. Born turned sixty-five and the City attempted to remove him from the City Plan.
Regarding when a claim becomes exigi-ble, comment (b) of the 1983 Official Revision Comments for Article 3495 states:
On principle, liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible. See 2 M. Planiol, Traité élémentaire de droit civil 3 Pt. 2, at 358 (Louisiana State Law Institute trans. 1959):
Liberative prescription begins to run as soon as the action accrues, or, as Pothier said “the day on which the creditor could institute his demand.” It cannot commence sooner, because the time given for prescription should be a time during which the action can be exercised, and one cannot reproach the creditor for not having acted at a time when he did not have the right to do so. Otherwise, it could happen that the right would be lost before it could be exercised, which would be as unjust as absurd (Cass.Civ., 11 Dec. 1918, D. 1923.1.96, P. and S. 1921.1.161).
It is the City’s refusal to allow Mr. Born to continue participation in the City Plan upon reaching his sixty-fifth birthday that gives rise to the right to demand continued coverage under the City Plan. The prescriptive period did not begin to run until Mr. Born was removed from the City Plan. That would be the point at which the City failed to do what Mr. Born contends it was obligated to do — i.e. to ^provide health coverage under the City Plan. Prior to that time, there was no indication that the City would apply the ordinance retroactively to Mr. Born. Additionally, the City, had it chosen to do so, could have amended the ordinance again prior to Mr. Born reaching his sixty-fifth birthday. As such, any claim demanding post-age sixty-five coverage would have been premature. Accordingly, the claim for post-age sixty-five coverage under the City Plan became exigible when Mr. Born reached the age of sixty-five and the City failed to provide the benefit. See Fishbein, 898 So.2d at 1269 (“Once [the employer] first paid plaintiff a supplemental component in her salary and failed to contribute its portion based upon this component she alleges was part of her earnable compensation, plaintiffs claim could be acted upon.”) Assignment of error number one is without merit.
In its second assignment of error, the City contends that the trial court erred in concluding that it was obligated to keep Mr. Born on the City Plan and pay 100% of the premium associated with the City Plan for Mr. Born and his family.
In reaching its conclusion that the City was required to keep Mr. Born on the City Plan, the trial court found this court’s decision in Singletary v. City of Slidell, 11-1538 (La.App. 1 Cir. 6/18/12), 97 So.3d 1087, writ not considered, 12-2068 (La.11/16/12), 102 So.3d 28, controlling. In Singletary, the same ordinance and same amendment were at issue. Therein, a councilman retired prior to the City of Slidell amending § 21-21 of the code of ordinances. The City, following its amendment of § 21-21, sent the retired councilman a letter informing him that it was making changes to. the City Plan, including moving all Medicare-eligible retirees and/or their spouses to a Medicare Advantage plan. Id., 97 So.3d at 1089. The retired councilman then filed a declaratory judgment action, seeking a declara *731 tion that the amendment did not apply to him because he had a vested right in his retirement health benefit. The trial court denied the retired councilman relief, but this court reversed, finding that the amended 17ordinance impermissibly divested the councilman of his vested right to benefits. Id., 97 So.3d at 1091.
In so ruling, this court noted that a contract is formed by the consent of the parties established through offer and acceptance. Singletary, 97 So.3d at 1089. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing or by action or inaction that under the circumstances is clearly indicative of consent. LSA-C.C. art. 1927; Singletary, 97 So.3d at 1089-90. Nearly every state has determined, using precepts similar to our civilian principles, that when an employer promises a benefit to employees, and employees accept by the actions in meeting the conditions, the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised benefit. Id., 97 So.3d at 1090, citing Knecht v. Board of Trustees for State Colleges and Universities and Northwestern State University, 591 So.2d 690, 695 (La.1991).
This court noted that the councilman, at the time of his retirement, met all the conditions required to participate in the City Plan. Moreover, the ordinance, in effect at the time of the councilman’s retirement provided that the retired employee could elect to continue to participate in the City Plan and required the City to pay 100 percent of the cost of the coverage. Sin-gletary, 97 So.3d at 1090. Therefore, this court deemed the councilman’s right to participate in the City’s health plan a vested right.[7]
The City avers that Singletary is not controlling because it did not address the “Plan Document and Summary Plan Description for City of Slidell Employee Medical Plan” (“Plan Document”), which the City acknowledges it failed to bring to this court’s attention in Singletary. The City contends that the Plan Document contained a reservation for the City to alter the City’s health plan such that Mr. Born, at the time of his retirement, had no vested right to remain on the City Plan. Specifically, the Plan Document, at the time of Mr. Born’s retirement, required |sretired employees to meet the qualifications “as defined in City Ordinance, Section 21-21” and further provided:
The Employer fully intends to maintain this Plan indefinitely. However, it reserves the right to terminate, suspend, discontinue or amend the Plan at any time and for any reason.
Changes in the Plan may occur in any or all parts of the Plan including benefit coverage, deductibles, co-payments, exclusions, limitations, definitions, eligibility and the like.
Based on the foregoing language in the Plan Document, the City concludes that the trial court erred in concluding Single-tary was controlling and that Mr. Born had a vested right to continue indefinitely under the same terms that the City Plan had at the time he retired.[8]
We recognize that the Plan Document was a contract between the City and Mr. Born, and reserved to the City “the right to terminate, suspend, discontinue or amend the Plan.” However, the City is not terminating, suspending, discontinuing or *732 amending the City Plan; rather, it is attempting to remove Mr. Born from the City Plan that covers its employees and requiring him to enroll in an entirely different plan — ie. the Humana Medicare Advantage. Therefore, because the City Plan was not terminated, suspended, discontinued, or amended, Mr. Born, who met all the requisite conditions at the time of his retirement to participate in the City Plan, has the right to continue to participate in the City Plan.
^CONCLUSION
For the foregoing reasons, the trial court’s November 14, 2013 Judgment is affirmed. Costs of this appeal in the amount of $1,376.50 are assessed to appellant, the City of Slidell.
AFFIRMED.

.Specifically, § 21-21 of the Code of Ordinances of Slidell provided, in pertinent part, as follows:
(b) Retired city employees and retired elected officials shall participate in the city's health insurance program under the following conditions:
1. A city employee of city elected official who:
a. Separates from city service after a minimum of ten years of service;
b. Within 18 months after such separation receives retirement benefits under any retirement plan authorized by the city;
c. Participated in the city's health insurance plan for a minimum of twelve (12) months immediately prior to such separation; and
d. Participates in the city’s health insurance plan from the time of separation to the time retirement benefits are received; may elect to continue to participate in the ■city’s health insurance plan. The city shall pay 100 percent of the costs of the individual or family coverage elected by the former employee or elected official beginning at the time retirement benefits are received.

. No one disputes that Mr. Born met the requirements set forth in § 21-21 of the Code of Ordinances of Slidell at the time he retired.

. Specifically, Ordinance No. 3493 amended § 21-21 of the Code of Ordinances of Slidell by adding subsection 3, which provides:
(3) Each City retiree shall, upon reaching the age of sixty five, apply for Medicare coverage Parts A and B. The City shall provide Medicare Advantage coverage at no cost to the retiree. Those retirees who are ineligible for Medicare shall be allowed to continue participation in the City's health insurance program to the same extent as prior to reaching the age of sixty five.

. The City Plan is administered through Benefit Management Services.

. There was no testimony adduced at the hearing. Rather, the court heard arguments and accepted a joint stipulation of facts and numerous exhibits into evidence.

. Louisiana Civil Code article 3494 provides, in pertinent part:
The following actions are subject to a liber-ative prescription of three years:
(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board; ...

. In Singletary, this court, in dicta, indicated that the City’s plan was in contravention of the federally recognized right of beneficiaries to freely decide the type of Medicare coverage desired by them. 97 So.3d at 1091. However, we need not address this issue.

. After the amended ordinance became effective, the City also amended the Plan Document, effective July 1, 2009, to provide:
*732 Eligibility Requirements for Employee Coverage is hereby amended by restating the following:
(2) is a Retired Employee of the Employer who has met the qualifications as defined in the City Ordinance, Section 21-21, who is not Medicare eligible.
Further, the Plan Document’s termination provisions were amended to reflect coverage through "[t]he last day of the calendar month prior to the month when a retiree become Medicare-eligible. ’ ’