No. 3839

Second Circuit

JOHNSON v. MAYOR AND CITY COMMIS-SION OF THE CITY OF NATCHITOCHES

(July 5, 1930. Opinion and Decree.)

Breazeale & Hughes, of Natchitoches, attorneys for plaintiff, appellant.

Rusca & Cunningham, of Natchitoches, attorneys for defendants, appellees.

ODOM, J. The municipality of Natchitoches owns and operates a water and electric power plant and furnishes its inhabitants with water and electricity for power and lighting purposes. L. H. Johnson, the plaintiff, is a citizen of the city and owns and operates a hotel, and the city furnished him with water and electricity for his hotel. On November 3, 1929, the city rendered plaintiff a bill amounting to $156.30, which included $109.70 for power and light consumed, $31.60 for water consumed, and $15

for "stand-by" or breakdown charge. Plaintiff was willing to pay and tendered the amount of the bill, less the standby or breakdown charge, which he refused to pay. An ordinance of the city authorizes the superintendent of the water and light plant to discontinue the water and light service to any patron who fails to pay the current month's bill within fifteen days after due. By virtue of this ordinance, the city, through the superintendent, threatened to discontinue all service, both for water and electricity, to plaintiff, if he did not pay the $15 standby or breakdown charge. Whereupon plaintiff brought this suit to enjoin the city from discontinuing its service to him, alleging that, if it did so, he would suffer irreparable injury. He prayed that the city be ordered to accept the amount tendered in full payment of the amount due by him, and prayed further that the court decree the standby or breakdown charge of $15 for one-half month's service null and void, as the same was not legally authorized.

The case was finally tried on its merits and resulted in a judgment for the city, recalling the preliminary writ of injunction issued and dismissing plaintiff's suit. From this judgment, plaintiff appealed.

The charge of $15 made by the city against plaintiff is not for electric current actually used, but for the service of keeping his hotel connected with the city plant, and for maintaining on its line an additional amount of power or current to be used by plaintiff in case his own private light plant should break down or fail to produce sufficient current for his use. Plaintiff, it seems, had been using both water and electricity from the city's plant, but erected a light plant of his own to supply his hotel. He expected to continue to use water from the city's plant, and to use city current also, in case he needed it.

When the city officials learned of this, they discussed among themselves the matter of requiring plaintiff to pay what is called a standby or breakdown charge, which is a service charge for maintaining a reservation of electricity on the line connected with plaintiff's hotel to be available to him at all times over and above that which would be maintained for all other purposes, or, as stated by Mr. Burgdorf, the city superintendent, "a floating current subject to call at any time by the turning on of his switch." Mr. Burgdorf explained that this extra power would have to be maintained on its lines by the city for current which might be needed and consumed by plaintiff to run his hotel, in case of an emergency. In other words, the city had to be prepared at all times to take care of plaintiff's needs.

It seems that plaintiff would need, in case of an emergency, a maximum of 20 horsepower. He understood that the city was entitled to compensation for its service in maintaining on its lines this extra power for his convenience, for which service he was willing, it seems, to pay. But the city had never fixed any rate for service of this kind, and the city superintendent did not know what to charge and did not suggest to plaintiff what the same might be. However, the superintendent held an informal conference with the mayor and city commissioners at which it was agreed that plaintiff should pay $1.50 per horsepower per month, or $30 for the 20 horsepower needed. Whereupon the city superintendent wrote and delivered in person to plaintiff a letter reading as follows:

"If you intend to use the City as a standby in the operation of your plant, it becomes necessary for you to advise us as to the amount of wattage or horsepower you desire, as the standby charge is based upon same. The standby charges are as follows:

"Day and night service, $1.50 per 746 watts or 1 H. P., Daylight service, $1.00 per 746 watts or 1 H. P.

"The above is plus the amount of electricity consumed on our present rates."

When plaintiff received this letter he was dissatisfied with the rate, and at once sought an interview with the mayor and commissioners with the purpose of protesting the rate demanded, his contention being that the rate was exorbitant. He hoped, he says, that he could get the matter of rates adjusted, but could not see the mayor and commissioners, and nothing was done. He went to the office of the mayor and city commissioners and asked the clerk of the commission council to show him the ordinance fixing the rates for services of this kind, and was told that there was none. In the meantime, his bill for October was rendered showing this charge of $15 for one-half month's standby service. He had never agreed to pay the charge and refused to pay it, and, fearing that the city would carry out its threat to discontinue all service to him, he brought this suit.

The authority and right of the city to fix and collect from its patrons a reasonable rate for service as standby or breakdown charge is not an issue before the court, as it seems to be conceded that the city has such right. Nor is the city's right to discontinue all service to a citizen and patron upon his failure to pay for service disputed. But the contention here made, and the only one, is that the city did not in fact legally fix a rate for standby services to be paid by plaintiff or anyone else and that, inasmuch as no such rate had been legally fixed or made, the plaintiff owes the city nothing; hence, the city is without right to discontinue service to him of water and such amount of current as he may use.

Our consideration of the issue involved has brought us to the conclusion that plaintiff's contention is well founded. He was willing to pay and tendered to the city the amount charged for water and current actually used by him. But the city refused to accept that amount and threatened to discontinue that service if the standby charge was not paid.

If the plaintiff did not owe the contested item on the bill, certainly the city had no right to refuse to furnish him water and current, because he was willing to pay those charges. He did not owe the standby charge if, in fact, no rate for such service had been fixed by the municipal authorities. He did not and could not owe for something not legally charged. The city had never by formal official action, by ordinance, resolution, or otherwise, fixed a rate to be charged its patrons for standby services, nor did it take any official action in plaintiff's case. It is not shown that either the mayor or the superintendent had authority under the general law or under the city charter to fix such rates.

When the plaintiff built his private plant and made it known that he desired to maintain his connection with the city's plant, the rate to be charged for the so-called standby service was discussed at an informal conference among the city officials, including the superintendent of the plant and the city attorney, at which conference it was agreed that plaintiff should pay the amount now claimed. But no official action was taken. It is not shown that this conference took place at a regular or special meeting of the city council, or even at the office of the city officials. In so far as the record discloses, the conference and discussion may have taken place on the street. Certain it is that no record or minutes of the meeting and discussion were made, and no ordinance or resolution adopted by the council fixing the charge or authorizing the mayor or any one else to fix it. Mr. Burgdorf, the city superintendent, it seems,

thought that some official action should be taken, and asked if it would not be necessary that an ordinance be passed fixing the rate, and was told by the mayor that such was not necessary. The mayor, after this conference, instructed the superintendent to notify plaintiff that he must pay $1.50 per horsepower a month, otherwise his hotel would be disconnected from the city's plant.

Municipalities are artificial beings or corporations created by the state, and, like all other corporations thus created, have certain delegated powers which can be exercised only in the manner prescribed by the law creating them. They can act only through their governing authorities. The governing authorities of the city of Natchitoches, as declared by Act No. 148 of 1912, are three commissioners, one of whom shall be mayor, who "shall have and possess, and the Commission and its members shall exercise all executive, legislative, judicial and administrative powers, duties and functions now had, possessed and exercised by the Mayor and City Council of the City of Natchitoches, as well as those conferred on the Municipal government of the State by the legislative enactments of the General Assembly, unless otherwise provided in this act" (section 4), and they "shall have an office in the City Hall or elsewhere as they may elect where all meetings of the Commission shall be held." Section 6.

The rule universally recognized is that:

"The governing body of a municipality can act validly only at authorized meetings duly assembled to the end that there may be conference and discussion of the measures proposed for corporate action. The individual action of any member or the unofficial acts or agreements of all or part of the members are ineffectual and without binding force, and cannot be given validity by any subsequent action of the council. Joint, official deliberation as provided by law is essential to give validity to the acts of the council." 43 Corpus Juris, sec. 754, page 497.

Learned counsel for the city contend that the city was operating the water and light plant in its private proprietary, and not in its governmental capacity, and that it was not necessary that the commission council adopt an ordinance fixing rates for this so-called standby charge. Acting in its private proprietary capacity, there are, no doubt, some administrative acts which it may perform through its duly constituted officials without being formally authorized by an ordinance or resolution. But to fix rates to be charged for service rendered by a municipally owned light plant is not one of them. That is a legislative function and municipalities can perform the legislative functions delegated to them only through ordinances, resolutions, or orders formally and officially adopted. Under the general municipal laws of this state, which apply to the city of Natchitoches, municipalities may own and operate public utilities, such as water and light plants, and are authorized "to fix the rates for the consumption of the service so furnished." It will be conceded, of course, that the rates for such services must be equal, uniform, and not discriminatory. They must apply to all classes, businesses, and individuals alike, and in order that they may so apply, and in order that consumers may know what rate is demanded, these rates must be officially fixed by ordinance and the proper record made and kept of them. Otherwise, one consumer might be charged one rate, and another consumer an entirely different rate.

With reference to the fixing of rates by a municipality being a legislative function,

the following expression taken from the case of Mayor & Aldermen of the City of Knoxville vs. Knoxville Water Co., 212 U. S. page 1; 29 S. Ct. 148, 150, 53 L. Ed. 371, is pertinent. There the court said:

"Nevertheless the function of rate-making is purely legislative in its character, and this is true, whether it is exercised directly by the legislature itself or by some subordinate or administrative body, to whom the power of fixing rates in detail has been delegated. The completed act derives its authority from the legislature and must be regarded as an exercise of the legislative power."

To the same effect is the holding in the case of San Joaquin Light, etc., Co. vs. Railroad Commission of State, 175 Cal. 74, 165 P. 16, where the Knoxville case, supra, was followed.

But even if it be conceded, and it is not, that a rate for standby service can be fixed otherwise than by ordinance, resolution, or order formally adopted by the governing authorities of a municipality, it certainly cannot be reasonably contended that such rate could be fixed without any formal official action whatever of the council and, as already stated, not only did the council fail to fix any rate by ordinance or resolution, but it failed to take any official action at all. No rate having been fixed, it follows that plaintiff did not owe the contested item on the bill, also, that if he did not owe the item, the city could not legally carry out its threat to discontinue its service to plaintiff for water and such amount of current as he might actually use.

In the alternative, it is urged by counsel for the city that plaintiff is estopped to dispute the charge here made, because he made use of the city's current after he was informed by the superintendent what he would be expected to pay for the standby service. We find no merit in this plea. Plaintiff did later use current from the city's plant, and acknowledges his indebtedness for that service. But his so doing is not an acquiescence in the charge here disputed. He was already connected with the city's plant, and was entitled to the use of its water and current. He made use of it, but refused all through to acknowledge the city's right to deprive him of that service because of his failure to pay a charge never legally made. The judgment appealed from is erroneous and must be reversed.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be reversed, and proceeding to render such judgment as should have been rendered by the district court, it is now ordered, adjudged, and decreed that the temporary restraining order or writ of injunction issued herein be maintained and made permanent; and that the city of Natchitoches, its commission council, and its superintendent of the water and light plant be and they are hereby prohibited from discontinuing the service to plaintiff for water and current; and further ordered that the city accept the amount tendered; and further adjudged that the charge of $15 is illegal and void; all costs of this proceeding to be paid by the city.