BARNETTE, Judge.
Plaintiff, a municipal corporation, brought suit to recover $1,735.91, the amount required to reach the $3,000 minimum annual charge for natural gas supplied from July 7, 1963, to July 6, 1964, by plaintiff’s municipally owned utility to Marydale Farm, owned by defendant. Defendant answered, denying that he owed the deficiency amount, and reconvened for judgment for the deficiency amount paid by him in a previous year; for an injunction ordering plaintiff not to cut off service; and for other equitable relief.
The petition for the injunction was tried separately, and a preliminary injunction was issued on April 5, 1965, restraining the plaintiff from refusing to supply gas to defendant pending a final decision on the merits. Judgment on the merits was rendered in favor of plaintiff for the full amount as prayed, and dismissing defendant’s reconventional demands. By the terms of the order by which it was granted, the injunction was dissolved when the judgment on the merits was rendered. Defendant has appealed suspensively.
Defendant is the owner of Marydale Farm situated in West Feliciana Parish some five or six miles from the plaintiff town. He operates the farm as an agricultural-industrial enterprise, part of which operation consists of artificially drying grass and forming it into feed pellets for livestock. Defendant wanted to secure natural gas to use in his grass dehydrator and approached the plaintiff town in November, 1960, to see if it would supply the gas he needed from its main which passed near the farm.
The town readily agreed to furnish the gas service. In a letter from Mr. Leon A. Picou, attorney for the town, dated November 25, 1960, defendant was offered an industrial rate (the lowest available) for his farm provided that no residences be connected to the industrial use meter and that *148 defendant guarantee a minimum use of $3,000 worth of gas annually. Defendant attempted to negotiate with plaintiff to get it to include several residential buildings on the farm on the industrial rate meter and to reduce or remove the minimum guarantee. When plaintiff would not yield on its conditions, defendant sought relief from the Louisiana Public Service Commission, charging that proposed rates and charges were arbitrary and excessive. The Commission declined to take any action on the ground that LSA-R.S. 45:1164 excludes municipally owned utilities from its jurisdiction.
Defendant then signed, on March 19, 1962, a gas service application included in which was the provision against attaching additional service on the consumer’s side of the industrial rate meter. A service contract between the parties was completed on May 15, 1962, providing for industrial use rates and for a minimum annual billing of $3,000. Later, additional meters were installed to service the residential buildings on the farm at domestic rates.
The first year of service under the contract was completed on July 6, 1963. At that time the town billed defendant $1,379.-43, the amount necessary to make up the $3,000 minimum. Defendant paid this amount on September 30, 1962, while protesting again the imposition of the minimum fee.
At the end of the second year the deficiency amounted to $1,735.91 for which defendant was billed in August, 1964. When defendant refused to pay, this suit was filed by the town at defendant’s domicile in Jefferson Parish.
The judgment of the district court in favor of plaintiff was based on the rationale that, since the town was under no obligation to furnish defendant with gas service, the contract between the parties, which covered all of the points in dispute, was the law between them and was not subject to judicial review in the absence of allegations of error, fraud, or duress. While we agree with the result reached by the court below, we cannot agree with its reasoning.
Clearly a municipally ownbd public utility is subject to the same standards of public service and to the same measure of judicial review as a privately owned utility. Hicks v. City of Monroe Util. Comm’n, 237 La. 848, 112 So.2d 635 (1959); Vicksburg, S. & P. Ry. Co. v. City of Monroe, 164 La. 1033, 115 So. 136 (1927); Johnson v. Mayor & City Comm’n of City of Natchitoches, 14 La.App. 40, 129 So. 433 (2d Cir.1930).
 There is a real issue here as to whether or not the town had an obligation to provide service for defendant. The town did serve other consumers outside its corporate limits, and its main passed along the right-of-way of a state road which cut through defendant’s farm. See State ex rel. Thalheim v. Louisiana Gas Serv. Co., 107 So.2d 817 (La.App.Orleans 1959). But, even if it be conceded that the town did not have to serve defendant, once it assumed the responsibility of doing so, it was charged with the duty of dealing with him in a fair and reasonable manner. Hicks v. City of Monroe Util. Comm’n, supra. The contract between these parties is charged with the same public interest as any other public utility contract and is subject to judicial review to protect that public interest.
In reviewing this contract we have first had to determine precisely what portions of it are objected to by defendant. Throughout the five years of contention between these parties, defendant has made many complaints, raised many issues, and charged plaintiff with various arbitrary and capricious acts. Some of his contentions are irrelevant, and some are inconsistent. A careful examination of the record reveals that he has two basic objections: first, that he should not be required to guarantee a minimum annual use of the service; and second, that it is unreasonable and unfair *149 to exclude his residential buildings from the industrial rate meter.
In the bond indenture pursuant to which the gas utility service was installed a rate schedule is included which is subject to revision under certain conditions by the town. There has been no revision, and the initial rate schedule is still in effect. It is as follows:
“A. DOMESTIC RATE
First 500 C.F. or less oi o
Next 2500 C.F. O >T| I — 1 o o
Excess O w O b\ cr
Minimum Bill ® H-* ui o
“B. COMMERCIAL RATE
First 50,000 C.F. @ $0.56 per MCF
Next 250,000 C.F. @ 0.46 per MCF
Excess @ 0.36 per MCF
Minimum Bill @ 5.00
“C. INDUSTRIAL RATE
All Deliveries @ $0.32 per MCF
Minimum Annual Bill @ 3,000”
Defendant has argued strenuously that -no definitions of the terms “domestic”, “commercial”, and “industrial” have been set out in the indenture or in any ordinance by the town council. He has established that many obviously “commercial” establishments under any ordinary definition of that term are served at “domestic” rates. He argues that this lack of definition and the obvious failure of the town to apply “commercial” rates to commercial enter•prises makes it impossible to determine who is entitled to what rate. As convincing .as his argument is, it gives him no help for he has not been prejudiced by this practice.
The practice on the part of the town has been to ignore the nature of the consumer installation and to permit the consumer to select the rate most economically beneficial to himself. If we omit the de■scriptive terms and simply refer to the particular schedules as A, B, and C, the problem is clarified. The town has three rate schedules to offer a prospective con,-sumer. A small consumer, such as a home owner or the proprietor of a small business, will select Schedule A. He will pay a higher price per thousand cubic feet (MCF) for the gas he consumes, but will only have to guarantee a minimum use of $1.50 per month during periods of low consumption. He could select Schedule B on which he would pay a substantially lower price per MCF for the amount he consumes, but would have to guarantee a minimum payment of $5.00 per month. The higher minimum obviously is necessary in order for the town to justify economically charging a lower rate.
We find nothing unusual in the rate schedules. Defendant has no basis on which to complain, for the same choice was offered him as is offered to everyone else. When the contract was first negotiated; at the end of the first year when defendant protested his deficiency; and at the trial of the case, the plaintiff town has offered to serve defendant at any rate he chooses. Actually, what defendant seeks is special treatment. He wants only that part of Schedule C (“industrial”) which *150 is to liis benefit—that is, the comparatively low rate for maximum consumption—without being required to meet that portion of the schedule, the guaranteed annual minimum, which is necessary to make the rate feasible for the town. For the town to treat defendant in the manner which he seeks would be a breach of its indenture and of its duty as a public utility.
 Defendant has made no showing that the minimum of $3,000 bears no reasonable relation to the rate charged under Schedule C. The burden of proof was his, and there is no evidence that even remotely suggests that the provisions within the particular schedules are unreasonable or unfair.
Since defendant has insisted from the beginning that he is entitled to the Schedule C (industrial) rates, he is bound by the minimum within that schedule. The judgment against him for the deficiency is correct. For the same reasons, the judgment denying his reconventional demand for the return of a previously paid deficiency is also correct.
As stated above, defendant also complains of the exclusion of certain residential buildings on the farm from service on the industrial rate meter. He contends that all the buildings are part of an entity and should not be treated as separate consumers. The pertinent provision in the service application reads as follows:
“10. In stallations [sic] where the Industrial Rates [sic] applies no other service may be connected on the consumers side of the meter to the line serving the industrial installation.”
The application also provides:
“12. Commercial and Residential installations must be on separate lines unless the residential rate is paid on all installations on a single line.”
We see nothing unreasonable or unfair in the basic policy of the town as reflected in these provisions. The policy is not to permit more than one installation to use a particular meter unless they do so at the domestic rate (the highest rate). This prevents combined usage of one meter by several customers or installations in an attempt to increase consumption to the extent that the lower rates of another schedule would become economically beneficial. As applied to industrial rate meters, the policy is to permit only one installation to be served by a meter since the industrial rate is the lowest rate scheduled.
Defendant complains, however, that the town has unreasonably limited the meaning of the word “installation” in dealing with him. He contends that his separate buildings, which include a guest house, a manager’s apartment, and two tenant houses, are integral portions of the agricultural-industrial entity which the fann constitutes.
The only evidence in support of this contention was presented by way of a hypothetical question to the town’s gas service expert. The tenor of the evidence is that gas service for the apartment of the watchman on an industrial plant who was on 24-hour duty and whose apartment was adjacent to, or in close proximity with, the industrial building would properly be charged at the same rate as the industry. This evidence is insufficient. There is, to our understanding, a difference between a watchman living on industrial premises and a tenant farmer, a guest in a guest house, and a manager living on a farm or ranch. Moreover, the expert on whom defendant relies testified directly that in his opinion it would be discriminatory against the other consumers to permit defendant to attach his residential buildings to the industrial use meter. Defendant simply failed to prove this portion of his reconventional demand.
*151 There were additional demands made by defendant in his initial and supplemental reconventional demands which do not require lengthy discussion in this opinion. As an alternative to his prayer that the rates charged him by plaintiff be declared arbitrary and unreasonable, he prayed that the town be decreed to be without jurisdiction to fix rates for gas service. He offered no proof to support this prayer; and, indeed, abandoned it in effect by concentrating on attacking the validity of the rate he was charged. This demand was properly dismissed.
Defendant also prayed for judgment for $1,171.49, the cost of installation of the meter and the line from the meter to his dehydrator. His basis for this demand was the theory that he had been put to this expense for equipment he could not use because of plaintiff’s excessive and unfair treatment of him as a consumer. Having concluded that defendant has failed to prove any unfair treatment, we see no basis for this demand. It also was properly dismissed by the court below.
Finally, defendant prayed for a •declaration that the entire rate structure ■of plaintiff’s gas service utility was excessive and for reduction of the rates to n. reasonable amount. The only evidence on this issue consists of annual audits of the town’s gas service fund from 1959 to 1964 which do not support defendant’s demand. The judgment below properly dismissed this demand.
Two days after trial, but before the decision on the merits, plaintiff, by motion, prayed for damages for expenses incurred in dissolving the preliminary injunction. The judgment from which this appeal has been taken neither granted nor denied that motion. Plaintiff renewed its request in its brief before this court, but we can take no action thereon since no action was taken below. The case will be remanded for •further proceedings on this issue alone. For the reasons assigned the judgment is affirmed, and the case is remanded for further proceedings consistent with this opinion. Defendant-appellant is to pay the cost of this appeal.
Affirmed and remanded.