PITMAN, J.
Plaintiff-Appellant Dennis Ford appeals the trial court's judgment in favor of Defendant-Appellee Lincoln Parish Fire Protection District No. 1 ("LPFPD"). For the following reasons, we affirm.
FACTS
On September 8, 2014, Mr. Ford filed a petition against LPFPD. He stated that on October 5, 2003, LPFPD hired him as fire chief and told him to keep a log of his compensatory time for the additional hours required of his job. He retired on May 13, 2014, due to heart and lung conditions contracted through his work as a firefighter. Upon retirement, he was entitled to continue his health insurance by paying 25 percent of the premium with LPFPD paying 75 percent. He amassed 4,600 hours of compensatory time and was to be compensated at 1.5 times his hourly rate of $53.49, for a total due of $369,081. He stated that LPFPD did not pay him for sick leave. He made a demand on LPFPD to pay the wages due him pursuant to La. R.S. 23:631, et seq. , contending that LPFPD violated these statutes by refusing to pay compensatory time and to pay or provide health insurance to him. He argued that he is entitled to a penalty in the amount of 90 *47 days wages, i.e., $36,512.80, for LPFPD's failure to pay him the amount due under the terms of his employment. He further stated that he is entitled to recover reasonable attorney fees pursuant to La. R.S. 23:632.
On October 29, 2014, LPFPD filed an answer in which it denied Mr. Ford's allegations and raised affirmative defenses. It stated that he failed to state a cause of action and contended that all or portions of his claims are beyond the applicable statutes of limitations, are barred by the doctrine of laches and/or are barred by the doctrine of estoppel.
On July 7, 2016, Mr. Ford filed a motion for summary judgment, contending that he is entitled to judgment for $431,533.52 for compensatory time, $69,131.10 for sick leave and $469.71 every two weeks from May 13, 2014, for health insurance; that LPFPD should provide and pay 75 percent of his health insurance premium; and that LPFPD should pay the penalty of 90 days' wages and attorney fees of one-third of the amount due for violating La. R.S. 23:631, et seq. On July 13, 2016, LPFPD filed a motion for summary judgment and argued that Mr. Ford's claims are without merit. It also filed a motion for summary judgment regarding judicial estoppel and prescription. On September 8, a hearing was held on the motions.
On September 26, 2016, the trial court filed a judgment addressing the motions for summary judgment. It denied Mr. Ford's motion, granted LPFPD's motion as to Mr. Ford's claim for accrued sick leave, denied LPFPD's motion as to Mr. Ford's claims for compensatory time and health insurance benefits and denied LPFPD's motion regarding judicial estoppel and prescription. It dismissed with prejudice Mr. Ford's claim for accrued sick leave.
A two-day bench trial was held on October 11 and 12, 2016. Tom Thompson testified that he served as the chairman of the Board of Commissioners (the "Board") of LPFPD from 1993 to 2013 and participated in the hiring of Mr. Ford as fire chief in 2003. He discussed Mr. Ford's job description and benefits. In the role of fire chief, Mr. Ford agreed to complete administrative responsibilities and to serve as a fireman, i.e., to be on call and attend to fires, including those that occurred after work hours and on holidays. Mr. Ford's salary was approximately $25 per hour or $54,000 a year, and he was provided with health insurance. In addition to his salary, Mr. Ford would receive compensatory time, which was capped for all firefighters. Mr. Thompson explained that Mr. Ford could use the compensatory time if he wanted to or it could accumulate and be used at the time of retirement. He testified that the Board's policy when an LPFPD employee retires is to pay 75 percent of the retiree's health insurance premium, with the retiree paying 25 percent.
On cross-examination, Mr. Thompson testified about the minutes from the September 16, 2003 meeting of the Board, which reflected that the Board voted to hire Mr. Ford at this meeting. The minutes discuss Mr. Ford's starting salary, but do not mention him being paid overtime or receiving compensatory time. He stated that in 2003, all employees obtained health insurance through the Lincoln Parish Police Jury; but, in 2007, LPFPD obtained its own health insurance policy through Blue Cross Blue Shield of Louisiana ("BCBS"). Mr. Ford was involved in obtaining the new insurance policy, and it was negotiated that Neill Kirkland, who served as fire chief before Mr. Ford, would be included on the new policy as a retiree. The policy listed Mr. Kirkland as the only covered retiree and stated that the retiree *48 class is a closed class with no other retirees allowed to enroll. Mr. Thompson noted that in 2010, the Board decided that Mr. Kirkland would have to pay 100 percent of his premiums to remain on the insurance. This upset Mr. Kirkland; and, in November 2010, the Board decided that everyone on the policy would be required to pay 25 percent of their premiums.
Mr. Ford testified that he served as fire chief of LPFPD from October 6, 2003, to May 13, 2014. He applied for the position, went through an interview process and then negotiated his salary and benefits with Mr. Kirkland, who was a member of the interview committee. They agreed that his salary would start at approximately $54,000 a year plus benefits of compensatory time, vacation time and health insurance. He spoke with Mr. Thompson about the expectations of the Board and learned that his role was not only administrative, but that he was also the head training officer and would work as a firefighter. Mr. Thompson told him to keep track of his compensatory time, i.e., any hours he worked over the regular duty day, so that he could accumulate that time and use it as needed. He kept track of his compensatory time by first writing it down on a calendar and later adding it to an Excel spreadsheet created by his secretary. He used his vacation days, but rarely used his compensatory time. He did not expect to be paid for his compensatory time, but did expect to be able to take off from work and receive his regular pay for the days he took off. In 2012, he began experiencing heart and lung problems. On May 13, 2013, he began a year of sick leave, which was to expire on May 13, 2014. Prior to the expiration, he contacted Ray Robinson, the co-chairman of the Board, and sought permission to use his compensatory time as a bridge to retirement. He was not allowed to use his compensatory time and retired on May 13, 2014, due to his health problems. He retired on disability and received 50 percent of his income. He stated that if he had been able to use his compensatory time, it would have greatly increased his retirement benefits. He retired with 23 years and 9 months of service; but, had he been able to use his compensatory time, he would have had 25 years of service and would have received approximately 80 percent of his income. He would also have been eligible for a backdrop worth $270,000 through the Firefighters' Retirement System.
Mr. Ford further testified that prior to 2007, LPFPD employees were on the Lincoln Parish Police Jury's insurance policy. He approached the Board about obtaining cheaper insurance, and the Board authorized him to begin the process. He received quotes from several insurance companies, and an advisory committee reviewed them and made a recommendation to the Board to obtain a policy with BCBS, with the employees paying 25 percent of their coverage and the retirees paying 100 percent of their coverage. The Board approved this recommendation, and Mr. Kirkland protested. The Board later decided that all employees and retirees would pay 25 percent and the Board would pay 75 percent. Mr. Ford stated that two employees retired after Mr. Kirkland's retirement and before his own retirement, and both retirees declined to keep insurance through LPFPD. When he retired, he was informed by the Board that he would no longer have health insurance through LPFPD after June 1, 2014. He then retained an attorney.
On cross-examination, Mr. Ford testified that when he retired, his salary was approximately $109,000. He agreed that his job description as fire chief included being directly responsible for the administration of the department, for financial planning and budgeting, for public relations and for *49 employee supervision and training. He noted that there was no discussion with Mr. Thompson or Mr. Kirkland during the hiring process that he would be paid additional compensation if he did not take time off. He agreed that there is no mention in the minutes from the meeting at which the Board voted to hire him about receiving overtime pay, accumulating compensatory time or using compensatory time as a bridge to retirement. When he hired an administrative assistant, he wrote to the local newspaper about the hiring and explained that his job was not a 40-hour-per-week job and that he did not receive compensation for the extended hours of service.
Danny Cross testified that he was employed by LPFPD for 16 years and began as a lieutenant and retired as district chief. He worked under Mr. Ford and observed him working beyond the normal workday hours by attending fires, trainings and drills, town meetings and anything else that needed to be done. He maintained a record of his work hours and those of his subordinates, but not those of Mr. Ford. He noted that when he was a lieutenant, he was paid overtime, but when he became district chief, he received compensatory time instead of overtime. When he retired on April 1, 2015, he did not have any accumulated compensatory time because he used it all before retiring. On the days he used his compensatory time, he did not go to work, but still received his pay.
Cindy Dugdale testified that she worked as the administrative assistant and secretary for LPFPD for 19 years before retiring in August 2012. In 2011, she helped Mr. Ford format a spreadsheet to keep track of his hours. She prepared the payroll reports and maintained a spreadsheet of employees' compensatory time. She noted that there was a 24-hour cap on compensatory time that was later increased to 48 hours. She stated that she was never given the option to remain on LPFPD's group insurance policy after her retirement because retirees were not eligible.
LPFPD submitted into evidence the deposition of Ray Robinson. Mr. Robinson testified that he serves on the Board, but was not on the Board when it hired Mr. Ford. He did not recall speaking with Mr. Ford about using compensatory time toward retirement. Mr. Ford testified to rebut Mr. Robinson's testimony and stated that prior to retiring, he spoke with Mr. Robinson by phone and requested to use his compensatory time.
Mr. Ford rested, and LPFPD called its witnesses. Neill Kirkland testified that he was employed as the fire chief of LPFPD from 1993 to 2003 and was replaced by Mr. Ford. Prior to Mr. Ford being hired as fire chief, he discussed the duties of the position with him. He stated that he never told Mr. Ford he would be paid overtime or that he could accrue compensatory time. When he was fire chief, he was not paid overtime and could not accumulate compensatory time. When he retired, LPFPD employees were covered by the Lincoln Parish Police Jury's health insurance policy, and he remained on this policy as a retiree with LPFPD paying 100 percent of his premium. Several years after he retired, LPFPD moved its policy to BCBS, and he was given coverage with LPFPD paying 100 percent of his premium. In 2010, the Board voted that in order to maintain health insurance, retirees would have to start paying 100 percent of their premium. He was the only retiree at this time, and this decision upset him. He expressed his displeasure, and the Board decided that everyone on the policy would pay 25 percent of their premium. He understood that he was the only retiree covered by the policy and that it was a closed class.
*50 Kevin Reynolds testified that he has worked for LPFPD for 15 years and is currently the fire chief. He stated that as fire chief he has never been paid overtime, is not allowed to accrue compensatory time and does not receive extra compensation for working beyond regular hours. He noted that he was paid overtime and allowed to accrue compensatory time before he became fire chief, that the secretary kept track of those hours in a spreadsheet and that there was a 48-hour cap on the amount of compensatory time that could be accrued. He testified that it is his understanding that new retirees will not be covered by the BCBS health insurance policy.
Richard Aillet testified that he is the chairman of the Board and serves as a volunteer firefighter. He noted that no individual member of the Board can bind the Board or LPFPD on his own. He stated that LPFPD employees have health insurance through BCBS and that there is no coverage beyond active employment. Since Mr. Kirkland retired, no other retirees have been allowed under the policy. He did not recall any conversations with Mr. Robinson about Mr. Ford wanting to use compensatory time as a bridge to retirement and did not recall any conversations with Mr. Ford about using compensatory time.
On January 18, 2017, the trial court filed its reasons for ruling. It first addressed Mr. Ford's request for compensatory time, stating that his claim appeared to be based on conversations he had with Mr. Thompson and Mr. Kirkland and noted that individual actions of members of governing bodies are not binding on the governing body. It also stated that compensatory time was not mentioned in the meeting minutes of the Board when Mr. Ford was hired; there were no writings memorializing any agreement that Mr. Ford receive compensatory time; and, in a 2009 letter written by Mr. Ford, he stated that he works 40 or more hours a week and does not receive any compensation for his extended hours of service. It further stated that Mr. Ford did not mention being denied the use of compensatory time as a bridge to retirement in his initial demand letter or in his petition or supplemental petition. It found that the evidence does not show that the Board agreed to pay compensatory time or allow it to be paid as a bridge to retirement for Mr. Ford, but, rather, that as fire chief, he was allowed to set his own schedule and to take time off as his schedule permitted. It found no meeting of the minds between the parties as to the promise of compensatory time and that Mr. Ford did not meet his burden of proof that LPFPD agreed to provide and/or pay him for compensatory time or for the value of his compensatory time. Citing the Fair Labor Standards Act ("FLSA") and federal jurisprudence, it detailed the law regarding payment of overtime for employees who work more than 40 hours per workweek. It found that Mr. Ford was an executive, administrative or professional employee who is exempt from the overtime and compensatory time provisions of the FLSA. Accordingly, it denied Mr. Ford's claim for compensatory time.
The trial court then addressed Mr. Ford's request for health insurance. It noted that his claim is based upon language from the November 9, 2010 meeting minutes of the Board that state that "[e]mployee and retiree health insurance contributions were considered" and a motion carried stating "employees and retirees to pay 25 percent of their health, dental and life insurance premiums effective January 1, 2011." It found that Mr. Ford's argument that the word "retirees" is plural; and, therefore, the intent of the Board was to extend health insurance benefits to all retirees, is contrary to the evidence presented at trial. It noted that all Board *51 motions as to health insurance made during 2010 consistently referred to "retirees," but that Mr. Kirkland was the only retiree on the policy. It found that the evidence does not show that these motions were intended to extend coverage to all prospective employees and that the BCBS policy clearly provided for a closed class of only one retiree, i.e., Mr. Kirkland, who had already retired. It noted that employees were aware that the retiree class was a closed class after the change to the BCBS policy and that no other retiree was allowed to enroll since the time of the new policy. Accordingly, it found that Mr. Ford failed to meet his burden of proof for his claim for post-retirement health insurance premium payments. It also found that Mr. Ford failed to meet his burden of proof for his claim under La. R.S. 23:631, et seq . It found no need to address additional defenses raised by LPFPD, including judicial estoppel and prescription of Mr. Ford's compensatory time claim.
On February 6, 2017, the trial court filed its judgment denying all of the claims asserted by Mr. Ford against LPFPD and rendering judgment in its favor.
Mr. Ford appeals.
DISCUSSION
Compensatory Time
In his first assignment of error, Mr. Ford argues that the trial court erred in failing to award any sums for the compensatory time accumulated through his period of service with LPFPD. He contends that he proved that he was promised compensatory time for hours worked beyond normal hours and on holidays. Both he and Mr. Thompson testified that his duties as chief included administration and firefighting and that Mr. Thompson told him that he would receive compensatory time for when he worked outside of regular work hours. He states that the Board did not memorialize all of the details of his compensation package in the meeting minutes. He argues that the FLSA requires the awarding of compensatory time for extra time worked and that the trial court erred in determining that he is exempt as the fire chief.
LPFPD argues that the trial court correctly denied Mr. Ford's claim for compensatory time. It contends that the only basis for which Mr. Ford could prevail was to establish the existence of a contract between him and LPFPD where LPFPD agreed to provide him with compensatory time. It argues that the trial court correctly determined that there was no meeting of the minds between the parties as to a promise of compensatory time; and, therefore, Mr. Ford did not meet his burden of proof that LPFPD agreed to pay him compensatory time. LPFPD contends that the trial court correctly determined that Mr. Ford was an exempt employee under the FLSA and was, therefore, not entitled to any form of overtime compensation.
La. R.S. 23:631(A) provides that upon the discharge or resignation of an employee, it shall be the duty of the employer to pay the amount then due under the terms of employment. The employee has the burden of proving by a preponderance of the evidence the contract of employment and the terms thereof upon which his suit is founded. Walter v. Clark , 143 So.2d 113 (La. App. 2 Cir. 1962).
Generally, the FLSA requires employers to provide overtime compensation to employees who work more than 40 hours per workweek. 29 U.S.C. § 207(a)(1). It also provides that employees of public agencies, such as a political subdivision of a state, may receive compensatory time off in lieu of overtime compensation. 29 U.S.C. § 207(o )(1). However, these provisions do not apply to employees employed in a bona *52 fide executive, administrative or professional capacity. 29 U.S.C. 213(a)(1).
In Monroe Firefighters Ass'n v. City of Monroe , 600 F.Supp.2d 790, 794 (W.D. La. 2009), the United States District Court for the Western District of Louisiana explained:
The employer has the burden to prove that an employee is exempt under the FLSA, and that exemption is construed narrowly against the employer. Tyler v. Union Oil Co. of Cal., 304 F.3d 379, 402 (5th Cir. 2002) (citing Dalheim v. KDFW-TV, 918 F.2d 1220, 1224 (5th Cir. 1990) ). "A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." 29 C.F.R. § 541.2 (2004). Thus, to establish exempt status, the employer must show that the employee meets both the FLSA's "salary" test and the appropriate "duties" test for the exemption which purportedly applies. Cowart v. Ingalls Shipbuilding, Inc., 213 F.3d 261, 262 (5th Cir. 2000).
* * *
The Secretary of the Department of Labor ("the Secretary") has established regulations defining and explaining what constitutes the salary basis of pay. "An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reductions because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a) (2009) ; see also 29 C.F.R. § 541.118(a)-(a)(1) (2003) (substantially similar regulation). The "exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.602(a) (2009) ; see also 29 C.F.R. § 541.118(a) (2003).
* * *
The pre- and post-August 23, 2004 regulations define a bona fide "executive" employee. Cf. 29 C.F.R. §§ 541.1(f) (2003)with 29 C.F.R. § 541.100 (2009). Under the former regulations, an employee is an "executive" if he (1) is paid on a salary basis not less than $250 per week; (2) manages, as his primary duty, a recognized department or subdivision; and (3) customarily and regularly directs two or more employees. 29 C.F.R. § 541.1(f) (2003). Management duties include, but are not limited to, the following duties:
interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or *53 implementing legal compliance measures.
29 C.F.R. § 541.102 (2009) ; see also 29 C.F.R. § 541.102 (2003) (listing the same duties with the exceptions of planning and controlling the budget and monitoring or implementing legal compliance measures).
Under the current regulations, to be an exempt executive, an employee must be paid on a salary basis not less than $455 per week, must meet the second and third requirements under the former regulations, and must also have "the authority to hire or fire other employees," or his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees" must be "given particular weight." 29 C.F.R. § 541.100(a) (2009).
Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of 29 C.F.R. § 541.100 are otherwise met. 29 C.F.R. § 541.106(a). Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. 29 C.F.R. § 541.106(a). The regulations provide, in part, in 29 C.F.R. § 541.700 :
(a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
(b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong or has no reasonable factual basis. Rosell v. ESCO , 549 So.2d 840 (La. 1989).
The trial court correctly determined that Mr. Ford did not meet his burden of proving that the terms of his employment included that LPFPD agreed to pay him for compensatory time. The only evidence presented by Mr. Ford to support his contention was his own testimony and the testimony of Mr. Thompson that they discussed that he would receive compensatory time for additional hours worked. However, Mr. Thompson, as an individual board member, was not authorized to take any action on behalf of the Board. See Johnson v. City of Natchitoches , 14 La.App. 40, 129 So. 433 (2 Cir. 1930). Further, *54 minutes from meetings of the Board demonstrate that it did not consider or approve any agreement with Mr. Ford regarding him receiving compensatory time as fire chief. In a letter written by Mr. Ford to the local newspaper, he stated that he worked more than 40 hours per week and that he did not receive compensation for the extended hours of service.
The trial court correctly determined that Mr. Ford is exempt as an executive, administrative or professional employee under the terms of the FLSA and, therefore, is not entitled to compensatory time. As fire chief, Mr. Ford was paid on a salary basis; managed, as his primary duty, a recognized department or subdivision, i.e., LPFPD; customarily and regularly directed two or more employees, i.e., his administrative assistant and at least four firefighters; and made recommendations to the Board about hiring employees. Although Mr. Ford contends that he is not exempt from receiving compensatory time because he performed nonexempt duties, an examination of 29 C.F.R. § 541.700 demonstrates that his primary duty was the performance of exempt work. Although he responded to fires while serving as fire chief, his primary duties were administrative in nature, which included managing the day-to-day operations of the fire department, supervising and training employees and preparing the budget.
Accordingly, this assignment of error lacks merit.
Health Insurance
In his second assignment of error, Mr. Ford argues that the trial court erred in failing to order LPFPD to provide health insurance to him and pay its portion thereof and in failing to award sums for that past failure. He contends that the Board's policy as of its meeting on November 9, 2010, was that employees and retirees would be required to pay 25 percent of their health, dental and life insurance policies and that this policy has never been changed.
LPFPD argues that the trial court correctly denied Mr. Ford's claim for continued health insurance benefits. It notes that LPFPD's health insurance policy does not afford coverage to retirees and that the policy is clear that the retiree class of covered employees is a closed class limited to Mr. Kirkland. LPFPD states that the Board's approval of the BCBS policy in 2007 eliminated the option for continued health insurance benefits for any future retirees and that all LPFPD employees, including Mr. Ford, were aware of the change to the health insurance.
A contract is an agreement by two or more parties whereby obligations are created, modified or extinguished. La. C.C. art. 1906. It is formed by the consent of the parties established through offer and acceptance. La. C.C. art. 1927. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing or by action or inaction that under the circumstances is clearly indicative of consent. Id.
Mr. Ford relies on Born v. City of Slidell , 15-0136 (La. 10/14/15), 180 So.3d 1227, in support of his claim. In Born , the plaintiff retired from his employment with the City of Slidell and received retirement benefits, including health insurance. The city then passed an ordinance requiring retirees to apply for Medicare coverage at age 65, and the plaintiff was informed that he would no longer be eligible for the city's health insurance plan once he turned 65. The court stated that "when an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions, the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised *55 benefit." Id. , quoting Knecht v. Bd. of Trustees for State Colleges & Univs. & Nw. State Univ. , 591 So.2d 690 (La. 1991). Accordingly, the court found that the plaintiff and the city had entered into a contract that resulted in the plaintiff's vested right to a promised benefit, i.e., his participation in the city's health insurance plan, and determined that the city's ordinance could not be applied retroactively to the plaintiff.
Although the Born court determined that the retiree was entitled health insurance, the facts of Born are distinguishable from those of the case sub judice . Mr. Ford did not have a vested right in health insurance as a retiree because this benefit was eliminated for retirees of LPFPD prior to his retirement. He testified that he approached the Board with the recommendation to obtain a new insurance policy. In 2007, he signed the application with BCBS, which states that the "retiree class is a closed class. No other retirees will be allowed to enroll." He was aware that the retiree class was a closed class almost seven years before his retirement. Therefore, he did not prove that he had a vested right in health insurance as a retiree, and the trial court did not err in denying his claim.
Accordingly, this assignment of error lacks merit.
Penalties and Attorney Fees
In his third assignment of error, Mr. Ford argues that the trial court erred in failing to award penalties and attorney fees for LPFPD failing to pay his claim. He contends that pursuant to La. R.S. 23:632, he should be awarded reasonable attorney fees for his well-founded suit for unpaid wages. He notes that the amount of attorney fees awarded is at this court's discretion, but he suggests that an award of 33 percent of all amounts recovered would be appropriate in this case.
LPFPD argues that the trial court correctly denied Mr. Ford's claim for penalties and attorney fees. It contends that because he is not entitled to any additional compensation from LPFPD, he is also not entitled to any recovery under La. R.S. 23:631, et seq.
La. R.S. 23:632 states:
A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.
B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.
C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
*56 As determined above, the trial court did not err in finding that Mr. Ford was not entitled to compensatory time or health insurance. LPFPD did not fail to comply with La. R.S. 23:631, et seq. Therefore, the trial court did not err in denying Mr. Ford's claims for penalties and attorney fees.
Accordingly, this assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court in favor of Defendant-Appellee Lincoln Parish Fire Protection District No. 1 and against Plaintiff-Appellant Dennis Ford. Costs of this appeal are assessed to Plaintiff-Appellant Dennis Ford.
AFFIRMED.
APPLICATION FOR REHEARING
Before Henry N. Brown Jr., Felicia Toney Williams, Frances Jones Pitman - Writing, Jeanette Giddens Garrett, and James Mark Stephens, JJ.
Rehearing denied.